Submitted on briefs August 5, decided August 24, 1909.

. STATE v. MOXLEY.

[103 Pac. 655.]

CRIMINAL LAW—LARCENY—ACCOMPLICES.

1. In view of the statute by its terms making larceny and the receiving of stolen goods distinct offenses, where defendant had nothing to do with the unlawful taking of a horse, his subsequent purchase of the animal did not make him an accomplice, even if he had knowledge of the previous theft.

LARCENY—SUFFICIENCY OF EVIDENCE.

2. Evidence *held* sufficient to justify a conviction of general larceny of a horse, and not of a larceny by altering a brand.

From Wallowa: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE McBRIDE.

Defendant, J. A. Moxley, was indicted jointly with one J. H. Howard by the grand jury of Wallowa County, for the crime of larceny of a gelding, and upon the trial was convicted and sentenced in imprisonment in the pentientiary, from which judgment he appeals.

On the trial Iven Stevens testified: That he had been employed for about two years by Samuel Wade, president of the Wallowa Stock Protective Association, to detect and bring to punishment persons engaged in stealing stock. That he went to defendant's place about June 20, 1908, and went to work for him building fence. That about June 21st he had a talk with defendant, in which it was agreed that defendant, Howard, and himself should engage in stealing horses off the range, and run them over into the State of Washington. That in pursuance of that agreement he and Howard did run seven head over into Washington about July 20th, and traded them off; witness receiving as his share of the proceeds a hack and set of harness, which he subsequently traded to defendant for the horse in controversy. Witness claimed that in driving the horses into Washington, and in his associations with Moxley and Howard, he was acting solely for the purpose of detecting and bringing to punishment the persons guilty of horse stealing. The State put the president of the stock association on the stand to show the

nature of Stevens' employment; but, upon the objection of the defendant, the evidence was excluded. Stevens also testified: That when he went to Moxley's place the horse in controversy was already there in defendant's pasture; that the brand had been altered before he saw it; that defendant told him that the horse belonged to Jim McAllister; and that he and Howard had changed the brand from a figure "6" to a double "B," and advised him when he traded for the animal to make the brand a little plainer. He took the horse from Moxley's pasture to that of Jack Johnson, and told Johnson that it was a "crooked" horse, meaning a stolen animal, and asked Johnson to particularly notice the brand.

Subsequently defendant and Howard were arrested for the theft of the horse, and Howard pleaded guilty and was used as a witness against defendant on the trial. Howard testified: That late in May, 1908, he and the defendant were riding on the range where this horse was running, and defendant said that he wanted it; that about June 1st he stole the horse and took it to defendant's ranch; that later he and defendant altered the brand on it; that the horse was stolen before they had any understanding with Stevens about running horses over into Washington; and that Stevens never had anything to do with taking this horse. The evidence showed that the horse in controversy was not among the number that were taken over into Washington, but remained at defendant's until Stevens traded for it and took it away. There was no testimony as to the taking, except that of Stevens and Howard. The evidence showed that McAllister was the actual owner of the animal. The court, among other things, instructed the jury that Howard, under his own testimony, was an accomplice, and that they could not convict the defendant upon his uncorroborated testimony. Defendant's counsel requested the court to charge the jury that witness Stevens was also an accomplice, which request was refused. Counsel also

requested the court to charge the jury that, if they found from the testimony that Stevens was an accomplice, they could not convict defendant upon his testimony unless it was corroborated, which the court also refused to do, and the refusal to give these two instructions is assigned as error.                                    AFFIRMED.

Submitted on brief under the proviso of Rule 16 of the Supreme Court. 50 Or. 580 (91 Pac. XII).

For appellant there was a brief over the names of *Messrs. Burleigh & Boyd.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General and *Mr. Francis S. Ivanhoe,* District Attorney.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The only witnesses as to Stevens' connection with regard to the horse in controversy, are Stevens himself and Howard. Both of these witnesses agree that the horse had been taken from the range and turned into Moxley's pasture before any arrangement or talk was had with Stevens about gathering up the herd that was subsequently taken to Washington. There was no testimony that Stevens had anything to do with the taking of the horse in question, and, this being the case, his subsequent purchase of the animal would not make him an accomplice, even if he had knowledge of the previous theft. Blackstone, Book 4, p. 38; *Harris v. State,* 75 Tenn. 124; *Springer v. State,* 102 Ga. 447 (30 S. E. 971). Blackstone states the rule as follows:

"An accesory after the fact may be where a person, knowing a felony to have been committed, receives, relieves, comforts or assists the felon. * * To buy or receive stolen goods, knowing them to be stolen, falls under none of these description. It was therefore at common law a mere misdemeanor, and made not the receiver accessory to the theft, because he received the goods only, and not the felon."

In the case at bar the larceny was complete, according to all the testimony, before Stevens had anything to do with the animal. The defendant had selected it upon the range and suggested to Howard to steal it, and he and Howard together had rebranded it and turned it into defendant's pasture before any conversation was had with Stevens regarding a plan to steal other horses. There is no evidence to indicate that Stevens took this horse for any other purpose than to detect and punish the men who stole it; but, if the fact were otherwise, he would have been guilty of the substantive crime of receiving stolen goods, and not of larceny. We are aware that there are respectable authorities that hold that a receiver of stolen goods is an accessory after the fact of the principal felon, and therefore an accomplice; but we think that logic and the better authority sustain the opposite view, especially in a State like ours, where the statute by its terms has made larceny and the receiving of stolen goods distinct and substantive offenses.

2. It is also contended that the evidence shows that defendant's only participation in the offense was by altering the brand, and that he cannot be convicted of general larceny, but should have been tried for larceny by altering a brand. The recent possession of the stolen property, the manner in which he kept it and dealt with it, his statements to Stevens. that McAllister was the owner of it, his dealing with it as his own—all tend to show him to have been a principal in the theft, and to corroborate Howard's testimony that he alone profited by it.

The judgment of the lower court is affirmed.

Affirmed.