Argued November 14, 1918, reversed and remanded February 4, 1919.

## STATE *v.* WARNER.

(178 Pac. 221.)

**Animals—Brands—Object of Statute.**

1. The object of Laws of 1915, page 43, and Laws of 1917, page 170, is to create an exclusive ownership of and a vested right in a particular brand after it has been recorded as therein specified to establish *prima facie* ownership and right of possession of the owner of such brand in or to any animal marked with such brand, and to declare incompetent any parol evidence of the ownership of a recorded brand.

**Animals—Proof of Ownership by Brand.**

2. Where brand has been recorded as provided by Laws of 1915, page 43, and the ownership of the brand on animal alleged to have been stolen is in one person, while the indictment charges ownership of the animal in another, the identification of the animal or the proof of ownership must be by evidence exclusive of the brand itself.

**Animals—Brands—Evidence.**

3. While Laws of 1915, page 43, does not prohibit testimony as to ownership or identification of an unbranded animal or of an animal

marked with an unrecorded brand, it does prohibit any "evidence of ownership of stock by brands or for the purpose of identification" of an animal, unless the brand upon it shall have been recorded as the act provides.

[As to brands on animals as evidence of ownership, see note in Ann. Cas. 1913E, 133.]

### Larceny—Evidence of Ownership—Sufficiency.

4. In prosecution for larceny of a steer, evidence *held* insufficient to sustain conviction, in that all testimony as to identification and ownership was founded upon a brand which was not recorded in the name of the alleged owner.

### Larceny—Erroneous Instruction—Brands.

5. In prosecution for larceny of a steer, an instruction in conflict with Laws of 1915, page 43, Section 3, providing that no evidence of ownership of stock by brands or for the purpose of identification shall be permitted unless the brands shall have been recorded, *held* prejudicial error.

BEAN, J., dissenting.

From Deschutes: T. E. J. DUFFY, Judge.

Department 2.

On April 8, 1918, the defendant was indicted jointly with G. W. Conrad by the grand jury of Deschutes County, for the larceny of a steer alleged to have been the personal property of J. T. Houston. The defendant demanded and was granted a separate trial, as a result of which the jury found him guilty as charged. From the judgment based upon that verdict he prosecutes this appeal, specifying eight different assignments of error, including the conduct of the prosecuting attorney and the comment of the court; but the vital question is the proof of the ownership of the steer by Houston as alleged in the indictment, and whether there is sufficient evidence to sustain the judgment.          REVERSED AND REMANDED.

For appellant there was a brief with oral arguments by *Mr. Ross Farnham* and *Mr. W. P. Myers*.

For the State there was a brief over the names of *Mr. H. H. De Armond,* District Attorney, and *Mr. N. G. Wallace,* with an oral argument by *Mr. De Armond.*

JOHNS, J.—We do not deem it necessary to analyze the evidence. If the proof of ownership of the steer is sufficient, the testimony is ample to sustain the conviction.

The old law often resulted in a confusion of brands and sometimes two persons claimed to own the same animal by virtue of the same brand, and no one had an exclusive, vested property right in any brand; to avoid which, the legislature in 1915 enacted the law providing "for a State Recorder of Brands and the manner of and fees for recording and transferring brands": Laws 1915, Chapter 33, page 43. Excerpts from this enactment follow:

"Section 1. The State Veterinarian shall be *ex-officio* Recorder of Brands.

"Section 2. No brand or brand similar thereto shall be used by more than one person, firm, association or corporation nor shall any brand be recorded in this State elsewhere than in the office of the State Veterinarian.

"Section 3. No evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this State unless the brand shall have been recorded as provided in this Act.

"Section 4. On and after the passage of this Act any person, firm, association or corporation desiring to adopt any brand shall make and sign a certificate setting forth a facsimile and description of the brand giving definitely its location on the animal, together with a statement of the desire to adopt the same and shall file the same with the State Veterinarian who shall record the same in a book kept by him for that

purpose and issue a certificate to the person, firm, association or corporation adopting the same and from and after the issuance of such certificate the person, firm, corporation or association shall have the exclusive right to use such brand within the State. Such person, association or corporation upon filing a brand shall pay to the State Veterinarian for recording the same a fee of $1.00; and *provided,* that all applications to have brands recorded shall be held by said State Veterinarian for the period of sixty days after this Act goes into effect before the same are recorded and that in the event two or more persons, firms, associations or corporations make application to have the same brand recorded, the one who has had said brand recorded in any county in this State for the greatest length of time shall be entitled to have said brand recorded with the State Veterinarian. The evidence of the record in such county shall be furnished by a certificate of the County Clerk; and *provided further,* that the State Veterinarian shall not file or record any brand if the same has already been filed or recorded by him in favor of some other person, firm, association or corporation but shall return such fee and facsimile to the person, firm, association or corporation sending the same."

Section 6 declares that:

"Any brand recorded in compliance with the requirements of this Act shall be the property of the person, firm, association or corporation causing such record to be made and shall be subject to sale, assignment, transfer, devise and descent as personal property."

Section 8 provides that:

"In all suits at law or in equity, or in any criminal proceedings when the title or right of possession is involved, the brand of any animal shall be *prima facie* evidence that the animal belongs to the owner or owners of the brand, and that such owner is entitled to

the possession of the said animal at the time of the action; *provided,* that such brand has been duly recorded as provided by law. * * * "

1. The act of 1915 was followed by another law passed by the legislature in 1917: Laws 1917, Chapter 132, page 170, entitled:

"AN ACT.

"Making it a crime for any person to brand, or cause to be branded, a horse, gelding, mare, mule, ass, jenny, foal, bull, steer, cow or calf, without first having such brand recorded as required by law,"

—and providing penalties for its violation. The whole purpose and intent of this legislation was to provide for the recording of brands, to create an exclusive ownership of and a vested right in a particular brand after it had been recorded as therein specified, and to prevent any other person from claiming or asserting any right to such recorded brand, to establish *prima facie* ownership and right of possession of the owner of such a brand in or to any animal marked with such brand, and to declare incompetent any parol evidence of the ownership of a recorded brand. The fees for recording the brand and obtaining the certificate are nominal, and the law is simple, definite and certain in its application.

The law is substantially copied from a similar statute of the State of Idaho, and in its construction the Supreme Court of that state laid down this rule in the syllabus of the opinion in *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235):

"One who has failed to record his brand as required by the provisions of the statute must prove his ownership of the animal on which an unrecorded brand is found in the same manner as he would prove his ownership of any other personal property or of an unbranded animal."

The opinion in that case says:

"It was evidently intended to enforce obedience to the statute by excluding all other methods of proving ownership of a brand than by a compliance with the statute. Of course, it is no more difficult now than it ever has been to prove ownership in an unbranded animal, and this statute puts the owner of an animal branded with an unrecorded brand in the same position with reference to proof of its ownership as if it had no brand on it at all."

This court in the case of *State* v. *Randolph*, 85 Or. 172 (166 Pac. 555), construing the act of 1915 above referred to, in an opinion by Mr. Justice HARRIS, said:

"Both the old and the new law make a recorded brand *prima facie* evidence that the owner of the brand owns the animal upon which the brand is found. Both laws prohibit proof of ownership of an animal by proof of the use of an unrecorded brand. The old law did not prohibit evidence of the use of an unrecorded brand to prove identity, but the new law does prohibit a party from offering evidence of an unrecorded brand for the purpose of identifying an animal."

The law was intended to prevent and punish the use of a recorded brand by another and to induce owners of livestock to record their brands, to make such recorded brands a species of property right, to define and protect such property right, to constitute the owner of a recorded brand the *prima facie* owner of any animal found marked with such recorded brand, to obviate confusion and the dual claim of ownership of the same brand, and to simplify the proof of ownership in both civil and criminal cases.

2, 3. The certificate of the State Veterinarian vests in any person who has complied with the law the exclusive right to the use of the recorded brand and that

right carries with it the *prima facie* ownership and right to the possession of any animal which is branded with such recorded brand. Proof of the right to the use of such brand may be made by the production of the original certificate issued by the State Veterinarian or a copy thereof certified by that officer. This is very simple and in all ordinary cases where the brand on an animal corresponds with the recorded brand and the owner of the recorded brand is alleged to be the owner of the animal, the certificate mentioned or the certified copy thereof will be sufficient evidence to sustain the allegation of ownership. But where the brand has not been recorded as the law provides, and the ownership of the brand on the animal is in one person, while the indictment charges the ownership of the animal to be in another, then the identification of the animal or the proof of ownership must be by evidence exclusive of the brand itself. The law does not prohibit testimony as to the ownership or identification of an unbranded animal or of an animal marked with an unrecorded brand, but it does prohibit any "evidence of ownership of stock by brands or for the purpose of identification" of an animal unless the brand upon it shall have been recorded as the act provides.

4. Upon the question of ownership, Clarence R. Harvey, a witness for the state, after testifying as to the size, color, odd-shaped head and the red spot under the left eye, of the steer, and that he first saw the animal "along the fore part of last August," continued as follows:

"Q. You mean to say to this jury that you can examine an animal out on the range and look at him without anybody telling you, and you can tell whose animal he is?

"A. Sure; if he is marked and branded.

"Q. Then how do you identify it as his animal other than from the brand?

"A. Well, I didn't know it was his animal until I looked at the brand. * *

"Q. And the only way you knew it was Houston's was by the brand?

"A. Yes, sir."

It appears from the testimony of J. T. Houston, the alleged owner of the steer, that he was an experienced cattleman, owning at the time of the trial about 300 head of cattle which he put "out on the range in the spring and gathered them in, in the fall." He described the particular steer in question as having a white face, white feet, white belly and white on his under parts and a red spot under his left eye. On cross-examination he testified as follows:

"Q. How many did you buy at the same time you bought him?

"A. Two hundred and eighty-five.

"Q. And you singled this one out particularly, did you?

"A. Not at that time.

"Q. When is the first time you noticed him particularly?

"A. When I seen him with Warner's cattle.

"Q. How did you know at that time he was your animal?

"A. I knew from the brand and marks.

"Q. Just a moment:—Have you got your brand recorded?

"A. Yes, sir.

"Q. Recorded in your name?

"A. Recorded in my wife's name.

"Q. You haven't got the brand recorded in your name yet?

"A. No, sir.

"Q. That is the only way you knew that steer, was by the brand?

"A. Yes, sir."

There is no testimony that Houston's brand was ever filed or recorded and Houston and Harvey were the only witnesses who testified for the state as to the ownership of the steer; and, when analyzed, their testimony conclusively shows that each of them identified the steer as the property of Houston by means of the brand only. While it is true, as the trial court said, that the testimony about the brand was brought out on cross-examination, it is also true that it was elicited on the proper cross-examination of the state's own witnesses, and that all of the testimony as to identification and ownership of the animal was founded upon a brand which was not recorded in the name of the alleged owner. There is no competent evidence which tends to show that J. T. Houston was the owner of any brand, and while he testifies that the steer was branded with a brand which was recorded in his wife's name, all of such evidence was parol. Section 3 of the act of 1915 specifically provides that "no evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this state, unless the brand shall have been recorded as provided in this act"; and Section 8 declares that "parol evidence shall be inadmissible to prove the ownership of a brand." Yet there is nothing but parol evidence as to either the ownership or the identification of the steer by brand, or as to the ownership of the brand itself.

5. After correctly charging the jury as to "the testimony relative to brands," the trial court further instructed the jury as follows:

"I might say in this connection that if there was any testimony here relative to brand, it was admitted before you gentlemen as a distinctive mark, a mark the same as any other mark that might have been found upon the animal. It was not introduced before you, if it was introduced, for the purpose of proving the identity of the brand, or for the purpose of proving the identity of the brand on the animal, or the ownership of the brand. That is not before you. The brand is not in question, in so far as the state is concerned in this case."

This statement is in conflict with the construction of Section 3 of the act of 1915 by this court in the case of *State* v. *Randolph*, 85 Or. 172 (166 Pac. 555), and we think it was prejudicial error.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.            REVERSED AND REMANDED.

BENSON and HARRIS, JJ., concur.

BEAN, J. (Dissenting).—The defendant J. E. Warner was indicted jointly with one G. W. Conrad, by the grand jury of Deschutes County for the crime of larceny of a steer, the personal property of J. T. Houston, alleged to have been committed on the tenth day of November, 1917. Upon a separate trial defendant Warner was, by the verdict of the jury, found guilty. From a judgment on the verdict he appeals.

The case depends upon the proof of ownership of the steer, the subject of the alleged larceny. At the close of the state's case, counsel for defendant requested the court to direct the jury to return a verdict of not guilty for the reason the state had failed to introduce any testimony as to the ownership of the animal alleged to have been stolen. The testimony

of two witnesses related to the identification and ownership of the steer. It appears from the record that in August, 1917, Clarence R. Harvey was riding in a car with the alleged owner J. T. Houston and together they got out and examined some cattle on the range near the road. The testimony of Clarence R. Harvey tended to show that he was familiar with the cattle belonging to J. T. Houston, about 500 head; that at the time he and Houston were together they found one of Houston's cattle about a mile from defendant Warner's Desert ranch with Warner's cattle. Harvey testified in part as follows:

"Q. What kind of an animal was this that you speak of as being one of Mr. Houston's?

"A. It was a two year old steer.

"Q. Can you describe it as to color?

"A. It was a pale red with some white markings on it. * * "

He identified the head of the animal offered in evidence as the head of the steer he and Houston found, and the same head that was found at Warner's ranch, and that was exhibited at the preliminary examination of defendant.

On cross-examination this witness testified to the effect that he had known Houston's cattle for the last two or three years; that he was pretty well acquainted with the majority of them; that it would be hard to say how many of those cattle he could identify as Houston's cattle. He stated:

"Well, the general appearance and breed of the cattle and everything, a person could identify the largest portion of the bunch."

As to other particular ones that he could describe, he mentioned a red bull, a black cow and a red heifer

he had taken care of, quite a number of black ones, eight or ten that he had handled and mentioned some distinguishing color marks, and said that he had never cared for the steer in question. This witness answered the following questions thus:

"Q. All right. What other particular distinguishing mark is there about this head by which you recognize it?

"A. It is kind of an odd-shaped head and it has a red spot under the left eye.

"Q. An odd-shaped head with a red spot under the left eye. What is the peculiarity of the head?

"A. Well, it is inclined to be a little bit blocky.

"Q. It looks like it might be a muley?

"A. Some people might call it a muley.

"Q. And it has a red spot under the left eye?

"A. Yes, sir.

"Q. When did you first notice that red spot?

"A. Along the fore part of last August.

"Q. Who was with you?

"A. Mr. Houston.

"Q. How many times before that did you see this particular animal?

"A. Never.

"Q. How do you know that animal was Mr. Houston's?

"A. By examining him and looking at him.

"Q. You mean to say to this jury you can examine an animal out on the range and look at him without anybody telling you, and you can tell whose animal he is?

"A. Sure, if he is *marked* and branded.

"Q. Oh, then you rely entirely upon the brand with reference to knowing that animal was Mr. Houston's animal?

"A. We looked at the steer and saw it was Mr. Houston's.

"Q. Do you rely upon the brand—I don't want you to say anything about the brand—but are you rely-

ing on the brand to identify that as Mr. Houston's animal?

"A. Not necessarily.

"Q. Then how do you identify it as his animal, other than from the brand?

"A. Well, I didn't know it was his animal until I looked at the brand.

"Q. Then the only way you knew was by the brand?

"A. Well, yes. * * "I call him a cross between a Hereford and a Jersey."

Mr. J. T. Houston, the alleged owner of the steer, testified in regard to the matter in substance about as follows: That he had been in the cattle business ten or fifteen years or more; that he looked after and handled the cattle; put them on the range in the spring and gathered them in in the fall; that in the spring of 1917, about the 1st of May, he put about 290 head of cattle on the desert south of Pringle Flat; that in August, 1917, with Mr. C. R. Harvey he found one of his cattle which he described as follows:

"The steer was a white-faced steer with white feet, white belly, white on his under parts and a red spot under his left eye."

That they paid particular attention to the spot under the left eye; that he bought that particular animal at Corvallis in April, 1917; that he dehorned him with a saw, fed him in April and turned him out with the herd in May. He identified the head exhibited at the trial as the head of the animal he saw in August, with Harvey; and stated that he never sold the steer; that at the time of the preliminary examination of defendant there was a part of the hide and feet with the head; that he examined the hide, and "it was a steer hide."

On cross-examination he stated in effect, that prior to August he had seen this particular steer along the 1st of May; that after he bought him in April until May he "had had him where I was looking after him all the time, feeding him and bringing him to the ranch"; that he bought him with 285 head. He testified as follows:

"Q. When is the first time you noticed him particularly?

"A. When I seen him with Warner's cattle.

"Q. How did you know at that time he was your animal?

"A. I knew from the brand and *marks.*

"Q. Just a moment. Have you got your brand recorded?

"A. Yes, sir.

"Q. Recorded in your name?

"A. Recorded in my wife's name.

"Q. You haven't got the brand recorded in your name yet?

"A. Not yet.

"Q. That is the only way you knew that steer, was by that brand?

"A. Yes, sir."

On redirect examination the prosecuting witness was asked this question:

"Now this brand, Mr. Houston, that Mr. Myers has questioned you about as being in your wife's name, are your cattle branded with that brand?"

Upon objection being made by counsel for defendant, it was sustained. The court stated:

"I will not permit you to go into the question of his brand.

"Q. (By Mr. Wallace.) Mr. Houston, where did you get this animal?

"A. I bought it from J. W. Brown, of Corvallis.

"Q. At the time you bought it, did it have a brand on it?

"A. I am not sure about that. Part of them were branded and part of them wasn't."

To the question, "Now, aside from the matter of the brand, Mr. Houston, do you know whether or not this animal that you and Hr. Harvey saw was yours?" the witness answered: "Well, yes I know from the wattles and earmarks." To this counsel for defendant urged an objection for the reason the "wattles and earmarks" were a part of the recorded brand, and could only be shown by a certified copy of the record.

The court permitted the description of the animal by the "wattles and earmarks." This raises an important question in this case. It is the basis of the motion on behalf of defendant for a directed verdict and in the opinion of the writer is determinative of the result of this appeal.

The court charged the jury in regard to the brand in part as follows:

"In this case a question came up here in the testimony relative to brands. I can say to the jury that the state is not relying upon the proof of a brand or proof of identification of the animal by the brand. I can say that to you, and if they have not proven the ownership of the animal and all the other allegations of the indictment beyond a reasonable doubt irrespective of the brands, in so far as they are concerned, of course your verdict would be not guilty. They have a right to rely on other evidence other than the offer of the brand. * * The brand is not in question, in so far as the State is concerned in this case."

It should be noted that the testimony does not disclose what brand, if any, was on the animal in question, or what brand was used by J. T. Houston, or

whether it was regularly recorded in his wife's name or not. That matter was only referred to in a general way on the cross-examination of the two witnesses mentioned.

The present statute of this state relating to the recording of livestock brands, Laws of 1915, page 43, in so far as deemed material to note is as follows:

"Section 1. The State Veterinarian shall be *ex-officio* State Recorder of Brands.

"Section 2. No brand or brand similar thereto shall be used by more than one person, firm, association or corporation nor shall any brand be recorded in this State elsewhere than in the office of the State Veterinarian. .

"Section 3. No evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this State unless the brand shall have been recorded as provided in this Act."

Section 4 provides the manner in which any person, firm, association or corporation desiring to adopt any brand shall have the same recorded by the State Veterinarian, the issuance of a certificate thereof, and that such "person, firm, corporation or association shall have the exclusive right to use such brand within the state."

Section 6 reads:

"Any brand recorded in compliance with the requirements of this Act shall be the property of the person, firm, association or corporation causing such record to be made and shall be subject to sale, assignment, transfer, devise and descent as personal property. Instruments of writing evidencing the sale, assignment of (or) transfer of such brand must be acknowledged and witnessed by two witnesses and shall be recorded by the State Veterinarian in a book to be kept for that purpose."

Section 8 is as follows:

"In all suits at law or in equity, or in any criminal proceedings when the title or right of possession is involved, the brand of any animal shall be *prima facie* evidence that the animal belongs to the owner or owners of the brand, and that such owner is entitled to the possession of the said animal at the time of the action; provided, that such brand has been duly recorded as provided by law. Proof of the right of any person to use such brand shall be made by a copy of the record of the same, certified to by the State Veterinarian in accordance with the provisions of this Act, or the original certificate issued to him by the State Veterinarian. Parol evidence shall be inadmissible to prove the ownership of a brand."

Section 9 reads:

"Owners of animals other than sheep or hogs in this State may use earmarks and the same shall be taken in evidence in connection with the owner's recorded brand in all suits at law or in equity, or in any criminal proceeding, when the title to such property is involved, or proper to be proved."

The following sections of the act provide that the owner or shipper of cattle or horses from the state shall furnish a certificate describing the horses or cattle to be shipped by him by "giving the number, name, sex, age and the brands and fleshmarks on each of the said animals"; and elsewhere refers to "fleshmarks" in connection with the brand, but nowhere in the statute is there any requirement that such ear or fleshmarks shall be recorded. The purpose of the statute seems to be plain that the owner of a stock brand shall record his brand in order to make any evidence thereby admissible in a civil or criminal case for the purpose of proving either the ownership, or the identity of stock. The statute makes a certified

copy of the record of a brand on an animal, or the original certificate issued by the State Veterinarian *prima facie* evidence that the animal having upon it such recorded brand "belongs to the owner of the brand." Not so with ear or flesh marks, which perhaps are not so permanent and substantial as a brand, but which the statute seems to contemplate are necessary to be used upon certain livestock for the purpose of identification, as well as a duly recorded brand.

The old Law of 1893, L. O. L., Section 5527, indicated that an earmark should be recorded. It is so suggested in *State* v. *Brinkley,* 55 Or. 134 (104 Pac. 893, 105 Pac. 708). It is very significant that in the Law of 1915, Section 9 of which enacts a portion of Section 5527, L. O. L., omits entirely any reference to an earmark, thus clearly indicating that the lawmakers intended a change in this respect.

Such a statute simply requiring the record of a brand, does not include ear and flesh marks upon animals, and does not prevent the proof of such marks on an animal in the same manner as any other distinguishing mark such as a peculiar color mark, for the purpose of identification of the animal although the same be unrecorded: 3 C. J., p. 42; 4 Am. & Eng. Enc. Law (2 ed.), 876, and notes; *Johnson* v. *State,* 1 Tex. App. 333; *Dreyer* v. *State,* 11 Tex. App. 631; *Love* v. *State,* 15 Tex. App. 563; *Groom* v. *State,* 23 Tex. App. 82 (3 S. W. 668). The word "brand" indicates some letter, figure or device burned upon an animal with a hot iron, while the word "mark" ordinarily indicates some change made in some part of an animal by a knife or other means, such as boring or slitting the ear: 3 C. J., § 85, p. 41; 4 Am. & Eng. Enc. Law (2 ed.), 874.

It seems the Texas statute requires brands and marks to be recorded, but it does not provide, as in the case of brands, that marks shall not be evidence of ownership unless so recorded, and hence an unrecorded mark is held in that state to be admissible in evidence in proof of ownership: 3 C. J., § 87, p. 41; *Johnson* v. *State,* 1 Tex. App. 333, at p. 345; *Dixon* v. *State,* 19 Tex. 134; *Gregory* v. *Nunn* (Tex. Civ. App.), 25 S. W. 1083; *Lee* v. *State* (Tex. Cr. App.), 65 S. W. 540; *Fisher* v. *State,* 4 Tex. App. 181.

Under our statute the fact that an animal is branded with a duly recorded brand is .only *prima facie* evidence that such animal is the property of the recorded owner of the brand. As declared by our statute, a duly recorded brand is made evidence of ownership of the person whose brand it may be, and not necessarily of the person in whose name it is recorded: 3 C. J., § 88, p. 42; *State* v. *Garrett,* 71 Or. 298, 308 (141 Pac. 1123); *Chavez* v. *Territory,* 6 N. M. 455 (30 Pac. 903); *Brown* v. *Moss,* 53 Or. 518, 524 (101 Pac. 207, 18 Ann. Cas. 541, and note).

In *State* v. *Garrett,* 71 Or. 298, 308 (141 Pac. 1123), it was held under the old law, Section 5526 et seq., L. O. L., that it might be shown by parol evidence that the animal alleged to have been stolen belonged to a person other than the recorded owner of the brand. In that case the brand was recorded in the name of one of the members of a copartnership alleged to be the owner of the animal, the subject of the larceny. The holding was to the same effect in *Chavez* v. *Territory,* 6 N. M. 455 (30 Pac. 903), at page 460.

Under the brand law of 1915, neither the ownership nor the identity of livestock can be proved in any court by a brand unless the same shall have been re-

corded as provided in the act. This is well settled: *State* v. *Randolph,* 85 Or. 172 (166 Pac. 555). Nevertheless in the trial of a case either civil or criminal involving the ownership of an animal, such ownership or the identity of the animal, may be shown by evidence independent of the brand in the same manner the ownership of an unbranded animal can be proved. The weight and effect of evidence based upon knowledge of "earmarks and wattles," or other evidence of description by color or other distinguishing marks, other than an unrecorded brand upon an animal alleged to have been stolen, are questions for the jury: 1 R. C. L., § 23, p. 1083; 3 C. J., § 89, p. 42; *State* v. *Wolfley,* 75 Kan. 406 (89 Pac. 1046, 93 Pac. 337, 12 Ann. Cas. 412, and note at page 416, 14 L. R. A. (N. S.) 87, note); Underhill on Crim. Ev., § 297; *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235); *State* v. *Garrett,* 71 Or. 298, 308 (141 Pac. 1123); *State* v. *Randolph,* 85 Or. 172 (166 Pac. 555); *State* v. *Henderson,* 72 Or. 201, 202 (142 Pac. 581); *Debord* v. *Johnson,* 11 Colo. App. 402 (53 Pac. 255); *O'Grady* v. *O'Grady,* 162 Mass. 290, 293 (38 N. E. 196).

As said in *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235), quoted with approval in *State* v. *Randolph,* 85 Or. 172 (166 Pac. 555):

"It is no more difficult now than it ever has been to prove ownership in an unbranded animal, and this statute puts the owner of an animal branded with an unrecorded brand in the same position with reference to proof of its ownership as if it had no brand on it at all."

Therefore in the present case, it was competent for the prosecution to prove the ownership and identity of the steer alleged to have been stolen by proof other than by a recorded brand. The state introduced no

evidence in regard to a brand and the court in ruling upon the evidence, as well as in the charge to the jury, plainly stated that the question of the brand did not have anything to do with the case, and plainly instructed the jury to the effect that they must find from the evidence other than, and independent of, reference to a brand, that the steer in question was the property of J. T. Houston, the alleged owner. The counsel for defendant upon the trial of the cause did not contend that the ownership and identity of the animal in question could not be proved by testimony other than by the brand, but contended that the ear and flesh marks were a part of the brand. This contention is not in conformity with the law. Defendant's counsel also claim that J. T. Houston, the alleged owner of the steer, as well as witness Clarence R. Harvey stated that the only means they had of knowing that the steer belonged to Houston was by the brand. It will be noticed by the testimony above quoted, that in giving their reasons for knowing the animal in question, both of these witnesses referred to the earmark, and Mr. Houston in his testimony plainly stated, to the effect that independent of any brand he knew the steer at the time he and Harvey examined it in August "by the earmarks and wattles."

The testimony of these witnesses on direct examination, especially that of Mr. Houston, tended to show that they were acquainted with the steer, and that the head of the animal killed by defendant was that of the steer belonging to Houston. Whether upon cross-examination, they gave a sufficient reason for their knowledge was a question for the jury. It was said in *State* v. *Dunn*, 13 Idaho, 9 (88 Pac. 235), at page 15 of the opinion:

"Although ownership of an unrecorded brand may not be proven by parol, still the brand itself may serve as the means to the owner himself for identification of the animal the same as any other artificial or natural mark might do."

This is a reasonable construction of the statute. It is not indicated by the branding law that a man in familiarizing himself with the description of his cattle should then rely upon a certificate of a recorded brand, or be prevented from depending upon any kind of a distinguishing mark for such purpose. It is only in introducing evidence in court that the prohibition of the statute applies. The evidence also tended to show that about the 10th of November, 1917, when the sheriff found three quarters of beef in the possession of the defendant Warner, that defendant Warner stated the other quarter was at his Desert ranch; that it was the meat of a two year old heifer he had killed. It appears that this ranch is about 20 miles from Warner's other ranch, and there was evidence indicating that the head of the animal which he had recently killed was found at the Desert ranch, and was the head of the steer described by Houston and Harvey, it being identified by the red spot under the eye.

The statute to which we have referred should be given an interpretation which will tend to effect the purpose of the lawmakers. The main purpose thereof seems to be to emphasize and increase the force of evidence of a recorded brand upon livestock, and to protect the property rights of the owners of animals having on them a duly recorded brand. Ear and flesh marks on livestock, not being required by the statute to be recorded, are governed by the rules independent of the statutory enactment. The evidence in the case

was amply sufficient to be submitted to the jury, and the instructions of the court were plain, and could not have been misunderstood by the jury. The reason given by the court for stating to the jury that the question of a brand was not in the case may not be perfectly clear, and the court may have referred to earmarks and wattles as a brand. Nevertheless, taking the charge as a whole, it clearly and fairly submitted the question of the ownership of the animal and other questions to the jury.

For these reasons, I am unable to concur in the conclusion reached by Mr. Justice JOHNS. The testimony in the case tended to show, and the jury believed beyond a reasonable doubt that the defendant Warner was guilty.

The judgment of the lower court should be affirmed.