Argued April 7, affirmed April 30, 1969

# STATE OF OREGON, *Respondent, v.*
# BUDDY FRANK SMITH
and
# MARCUS EUGENE LEONARD,
*Appellants.*

453 P2d 942

*John Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*James A. Sanderson,* Deputy District Attorney, Klamath Falls, argued the cause for respondent. With him on the brief was Samuel A. McKeen, District Attorney, Klamath Falls.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

The appellants were jointly indicted, tried together and convicted of larceny of a calf. ORS 164.380. The defendants' consolidated appeals are from the conviction, and they assign as errors the trial court's allowing in evidence statements made by one of the defendants to a deputy district attorney after arrest, its denial of their motions for dismissal, and its failure to give one of their requested instructions.

Both of the defendants had been injured by the alleged owner of the calf, Mr. Mills, when he and his son apprehended defendants in possession of the freshly killed calf as they were eviscerating it. Mr. Mills, his son, and several of their friends were stand-

ing over defendants when the state police arrived, more than an hour after the two men had been apprehended. One of the appellants told an officer then that he would make a statement if the officers would protect him from the ranchers. The officer told him that he would be protected and that he should not make any statement until he had been advised of his rights. Another officer then advised both defendants of their rights, reading to them from the "Miranda" card he carried. According to the officer's testimony both men told him they understood the warnings. Police did not question either of the defendants at the scene and nothing they said there was offered in evidence.

Later that night a deputy district attorney went to the hospital where the defendants had been taken. He entered a room where both defendants were. A police officer and hospital personnel were also present. Defendant Smith began talking about matters irrelevant to any issue later raised at the trial, and as he talked the deputy district attorney identified himself and began asking questions. Mr. Smith at that time made a statement which, if true, would have absolved the defendants. It contained details about which contradictory evidence was introduced during the trial, and it is conceivable that discrepancies in these details could have influenced the jury. Therefore, use of the statement in evidence is examined under the constitutional procedures that limit the taking and use of a statement. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966).

■ The trial judge heard testimony concerning the statement in chambers. At the end of this hearing he found as follows:

"THE COURT: The Court does find, that the defendant, Buddy Frank Smith, was advised by

Officer Christiansen of his various constitutional rights, by his own testimony, he recalls that. He testified that the statement of the officer at the time of the incident was the same that he read from the card yesterday in court. There has been no testimony of any—no indication of any mistreatment to get a confession. He has testified on cross examination the officer advised him to keep quiet until he was advised of his rights. He might have told—he might have told the officer he understood. There is direct testimony that he did say that he understood the warning. There is no testimony made part of Mr. Parks [sic] that the statement was made pursuant to any questioning. The Court finds it is admissible for the jury to determine whether it was voluntary and whether or not it was truthful. Call in the jury."

Although in this language the judge made no specific finding of voluntariness, the very purpose of the *in camera* hearing under *State v. Brewton,* 238 Or 590, 395 P2d 874 (1964), was to hear evidence and decide that question. The judge did hear all evidence offered on the question. The facts that he allowed the statement into evidence, submitted the question of its voluntariness to the jury, and made the findings he did pronounce can lead to no other conclusion than that he found the statement to have been voluntary and made under circumstances minimally required by *Brewton.*

The circumstantial evidence against defendants was very strong. Except for the contested statement they offered little defense. One witness for them testified that at some time before the alleged offense, he had looked at guns in Mr. Smith's home but had never seen among them the rifle which was proven to have killed the calf and which, with an empty shell casing that was proven to have been fired in it, was in the

cab of their pickup at the scene of the crime. The same witness also testified to the effect that Mr. Smith had at least one freezer full of meat at his home, the implication being that Smith had no need to kill the calf.

■ The indictment alleged that the defendants stole "a certain black and white heifer calf marked with * * * [a certain] brand on the left front shoulder, said heifer calf being the personal property of John Mills." At the trial it was proved that the brand was registered to John Mills and his wife Lillian. Mills and a neighbor testified that the calf belonged to Mr. Mills. The defendants challenge the sufficiency of this proof. The question arises because, as we have said, "* * * In larceny the corpus delicti is composed of two elements: (1) one entitled to possession of the property has been deprived of possession; and (2) the deprivation has been accomplished by a felonious taking * * *." *State v. Lewis,* 248 Or 217, 219, 433 P2d 617 (1967); *State v. O'Donnell,* 229 Or 487, 367 P2d 445 (1962). The defendants contend that the indictment can only support a conviction if the state succeeds in showing that John Mills had a "special" property interest in the calf he owned jointly with his wife, of a nature that gave him "exclusive" possession, control and management. They have assigned as error the trial court's denial of their motions for dismissal and refusal to give instructions they requested on the subject.

There are Oregon cases which lend some credit to the argument the defendants are making. In *State of Oregon v. Wilson,* 6 Or 428 (1877), the court approved (in dictum) an instruction to the effect that the jury was to acquit the defendant if it found that the stolen property was partnership property unless it also found

that at the time the property was taken it was, by virtue of some arrangement between the partners, in the possession of a certain member of the partnership who was named as the owner in the indictment.① Dictum in *State v. Opie,* 179 Or 187, 170 P2d 736 (1946), also seems to support the defendants' claim, although other dictum in the case is to the contrary.

■ ORS 164.380 provides that, "Any person who commits larceny by stealing, or taking with the intention of converting to his own use any  *  *  *  calf  *  *  *, whether the owner is known or unknown, shall be punished  *  *  *." Larceny is defined in ORS 164.310(1): "Any person who steals the property of another, or who wilfully takes, carries, leads or drives away the property of another with the intent to deprive such other of such property permanently, is guilty of larceny  *  *  *." Reading these two sections together, we think it is clear that the state did not have to prove that John Mills had exclusive possession, control and management of the calf. The rights he had as a joint owner were sufficient to make the indictment good. Our statement in *State v. Lewis,* supra, is not inconsistent with this result.②

---

① The decision in State v. Wilson, supra, also holds that any evidence of special ownership in the owner named in the indictment, however slight, is sufficient to warrant submitting the matter to the jury. In the instant case, as already noted, Mr. Mills and a neighbor each testified that the calf belonged to Mr. Mills.

② In Hearn v. State, 55 So2d 559, 28 ALR 2d 1179 (Fla 1951), where theft of cattle was involved and defendant raised a question about ownership of the cattle, the Florida Supreme Court said:

"Larceny is an offense against the public  *  *  *  and the offense is the same whether the property stolen belongs to one person or several persons jointly  *  *  *. The names of the owners of the stolen property constitute no part of the offense. They are stated in the information primarily as a matter of description for the purpose of identification and to

■ The trial judge declined to give the defendants' requested instruction as to necessity of a finding of exclusive possession, control and management in John Mills. Instead he instructed the jury that the defendants' pleas of not guilty placed at issue the facts alleged in the indictment, and that one of these facts was that the calf was the personal property of John Mills. He also instructed that "When a crime involves the commission of or an attempt to commit a private injury and is described with sufficient certainty * * * [in] other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material * * *." This instruction is the statutory law of Oregon. ORS 132.630. In a prosecution under ORS 164.380 it is entirely proper to apply this law. *State v. Chapin* and *State v. Savan,* Footnote 2, supra. The judge did not err in declining to give the requested instructions or in giving the instructions he did. It was also proper to deny the motion for dismissal.

Affirmed.

---

■ show ownership in a person or persons other than the accused." 55 So2d at 561.

To the same effect see State v. Savan, 148 Or 423, 429-432, 36 P2d 594, 96 ALR 497 (1934); State v. Chapin, 74 Or 346, 352-53, 144 P 1187 (1914). In 52A CJS 438, Larceny § 13, the editor in Note 18 states:

"One charged with larceny will not be heard to raise nice and delicate questions with respect to title to the article stolen."