Argued March 21, 1977, affirmed March 13, reconsideration denied May 3, petition for review allowed October 17, 1978, 284 Or 80a

# STATE OF OREGON, *Respondent,*
## *v.*
# DONALD DOUGLAS HULL et al, *Appellants.*
## (No. 1466, CA 6728)

575 P2d 1015

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary Babcock, Public Defender, Salem.

Jesse R. Himmelsbach, Jr., District Attorney, Baker, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The defendants were charged with first degree theft of a beef animal in a single indictment and were jointly tried and convicted by the court sitting without a jury. They assert two errors in the trial. First, that their conviction was based on the uncorroborated testimony of accomplices, and second, there was insufficient evidence the stolen beef animal was the property of the person named as the owner in the indictment.

The defendants, who are brothers, in the company of Robert Foote and his wife, Laurlie Foote, were hunting for deer in eastern Oregon. All four of these persons were riding in a jeep owned by defendant James Hull who was driving. As they drove on a roadway near a BLM range, defendant Donald Hull said "if we can't get a deer, lets get a beef." When they came upon a small herd of grazing beef cattle James Hull slowed the jeep and Donald Hull got out, ran up the hill to the cattle and shot a red colored white-faced heifer. Mr. Foote then proceeded to help him remove the entrails of the animal where it had fallen. The three men then loaded the carcass in the jeep.

Mrs. Foote was told to run down the road to watch for anyone who might be coming and signal if she saw anyone. She testified she was frightened and remonstrated against killing a cow, she, however, went down the road while the animal was being loaded in the jeep. The three men picked her up about a mile down the road from where the animal was shot. Just before she was picked up she saw a pickup approaching and "whistled toward the group" but they did not hear her.

The four of them drove to the home of Marvin Cartwright where the beef was skinned and divided in half with the assistance of Mr. Cartwright. The Footes took half of the beef and the other half was loaded into defendant James Hull's station wagon. The skin and head of the animal were disposed of.

[ 185 ]

Approximately seven months later Mr. Foote took an officer from the Oregon State Police to where the animal had been shot. There the officer found the remains of a stomach of a large grass eating animal which he testified could have been from a beef cow, an elk or possibly a deer.

The indictment alleged the beef animal was owned by Ronald Doman. Mr. Doman was the owner of a cattle raising operation in eastern Oregon. He runs cattle on his own property and on adjoining BLM rangeland. Four other cattle ranchers run cattle in the general area including the BLM range. The cattle of the various ranchers intermix due to inadequate fencing between ranches and the BLM reserve.

In the spring Mr. Doman had put 50 head of cattle to pasture including some black colored whiteface and some red colored whiteface animals. At the fall round-up he recovered 48 animals including three new born calves. He was unable to find five of his heifers which included both black and red white-faced cattle.

Mr. and Mrs. Foote and Marvin Cartwright were granted immunity from prosecution pursuant to ORS 136.617 and 136.619 in exchange for their testimony. The defendants argue these three witnesses were accomplices and their testimony must be corroborated under ORS 136.440(1) to sustain a conviction. The state concedes Ronald Foote was an accomplice in the theft but contends neither Mrs. Foote nor Cartwright were and their testimony is sufficient to corroborate the testimony of Mr. Foote.

There was no evidence presented, other than the testimony of Mr. and Mrs. Foote and Mr. Cartwright, which tended to connect the defendants with the crime. Consequently the conviction cannot be sustained unless either Mrs. Foote or Mr. Cartwright is not an accomplice under ORS 136.440(2). Stated another way, if either Mrs. Foote or Mr. Cartwright is not an accomplice either testimony would be sufficient corroboration. Since we determine Cartwright was not

an accomplice it is unnecessary to discuss Mrs. Foote's status.

The definition of accomplice is contained in ORS 136.440(2) which provides:

"As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165 * * *."

The appellate courts of Oregon have struggled with the definition of accomplice on many occasions prior to the enactment of this statute. In *State v. Winslow*, 3 Or App 140, 472 P2d 852 (1970), after an exhaustive analysis of authorities, we determined there was a broad and a narrow definition of accomplice. The broad definition said an accomplice is one who has participated in the commission of the offense or who while not being present, nevertheless, in some manner aided, advised or encouraged the defendant to commit the crime. The narrow view holds an accomplice is one who can be indicted and punished under the same statute which has been invoked against the defendant. We concluded Oregon applied the narrow definition of accomplice.

ORS 136.440(1) was enacted as part of the new Oregon Criminal Procedure Code developed by the Criminal Law Revision Commission and became effective January 1, 1974. The commission's comments contained in the Proposed Oregon Criminal Procedure Code, Final Draft and Report — November 1972, after reviewing several Oregon Cases including *State v. Winslow, supra,* continued:

"Subsection (2) [ORS 136.440(2)] is proposed to eliminate the confusion and set forth the Oregon position of who is and who is not an accomplice * * *. The new criminal liability statutes [ORS 161.155 and 161.165] appear to be a rational approach to the definition of who is an accomplice because if a person is criminally responsible for the conduct of another, he has participated to some degree in the offense charged and can

[ 187 ]

therefore be charged with the same offense under ORS 161.150."

This statute adopts substantially the definition described as the "narrow" view in *Winslow.* Under this statute a witness is an accomplice only if he can be held criminally liable for the conduct of the defendants and therefore indictable for that conduct. It is not sufficient that his actions may indicate criminal liability for other crimes the defendants may be guilty of or that his actions indicate commission of a crime for which he can separately be charged. Here the defendants were charged with theft, consequently to be an accomplice Cartwright must be deemed criminally liable for the defendants' conduct respecting that theft.

If the facts are in dispute as to whether a witness is criminally liable and thus an accomplice this must be resolved by the trier of fact. If the facts are settled, whether or not a person is an accomplice becomes a matter of law. *State v. Polk,* 5 Or App 605, 485 P2d 1241 (1971). The court, in ruling on the defendants' motion for acquittal, found Cartwright was not an accomplice. The evidence is clear Cartwright was first aware of the theft when the animal was brought to his residence. The theft of the animal, which was the crime for which the defendants were being tried, was completed when the animal was shot on the range. Cartwright's participation in skinning and sectioning the beef may make him criminally liable for the crime of theft by receiving in violation of ORS 164.095, but not for theft in the first degree, ORS 164.055. We find as a matter of law he was not an accomplice to the criminal conduct for which the defendants were indicted.

Cartwright, who was a friend of both defendants, testified reluctantly and only after being compelled following a grant of immunity pursuant to ORS 136.617 and 136.619. His testimony was evasive,

somewhat confused and at times contradictory. However, he did testify the two defendants and Mr. and Mrs. Foote brought a beef carcass to his house. The believability of his testimony was for the trier of fact, the court in this case. This testimony, if believed by the court, was sufficient to connect the defendants with the commission of the crime and therefore sufficient corroboration of the testimony of Mr. and Mrs. Foote.

In their second assignment of error the defendants claim their motion for judgment of acquittal should have been granted because the state failed to prove an essential element of the crime, i.e., that the animal which was stolen was the personal property of Ronald Doman as alleged in the indictment. They argue that since five ranchers, including Mr. Doman, pastured cattle in the area where the animal was killed it could have belonged to any of the five ranchers or it could have been wild.

The defendants cite several early Oregon cases which seem to support the proposition that proof of ownership as alleged in the indictment is an indispensable element of theft. *State v. Miller,* 133 Or 256, 289 P 1063 (1930); *State v. Moss,* 95 Or 616, 182 P 149, 188 P 702 (1920); *State v. Warner,* 91 Or 11, 178 P 221 (1919); *State v. Childers,* 71 Or 340, 142 P 333 (1914). Each of these cases dealt with the sufficiency of the evidence to establish beyond a reasonable doubt that the owner specified in the indictment had exclusive ownership or exclusive rights of possession to the stolen property. They seem to adapt a rather mechanical approach under contract law in determining rights of possession or ownership.

The more modern view is expressed in *State v. Smith and Leonard,* 253 Or 280, 453 P2d 942 (1969). In that case the indictment alleged ownership of the stolen cattle in a particular person while the evidence showed there was joint ownership with another individual. The court held that this variance did not require reversal. In arriving at its decision the court

quoted from *Hearn v. State,* 55 So2d 559, 28 ALR2d 1179 (Fla 1951), where the court in a cattle theft case approached the question of the cattle's ownership:

> " 'Larceny is an offense against the public * * * and the offense is the same whether the property stolen belongs to one person or several persons jointly * * *. The names of the owners of the stolen property constitute no part of the offense. They are stated in the information primarily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused.' " 253 Or at 285-86 n 2.

This, in substance, is the meaning expressed in ORS 135.725:

> "When a crime involves the commission of or an attempt to commit a private injury and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."

*See State v. Smith and Leonard, supra; State v. Schindler,* 20 Or App 400, 531 P2d 915, Sup Ct *review denied* (1975).

We do not mean to say an allegation of ownership is unnecessary in an indictment. It is required as part of the description of the property, not as an element of the crime of theft, but to protect the defendants from the possibility of being charged twice for the same offense. *State v. Schindler, supra; State v. Nored,* 10 Or App 126, 498 P2d 839, Sup Ct *review denied* (1972). It follows from these authorities and ORS 135.725 that if the evidence in this case is insufficient to establish ownership of the animal as that of Mr. Doman the variance is not material to proof of the crime and not fatal to the conviction.

Affirmed.

**SCHWAB, C. J.,** dissenting.

I respectfully dissent. The majority incorrectly concludes that Marvin Cartwright was not an accomplice of the defendants. ORS 136.440 provides:

"(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

"(2) As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165,[1] or, if the witness is a juvenile, has committed a delinquent act, which, if committed by an adult, would make him criminally liable for the conduct of the defendant."

ORS 161.155 provides:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime he:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort he is legally required to make."

We have repeatedly held that a person is an accomplice for purposes of ORS 136.440 (formerly ORS 136.550) "if he could be indicted and tried for the same *criminal act* for which the defendant is being tried." *State v. Fitzgerald,* 14 Or App 361, 367, 513 P2d 817 (1973) (emphasis supplied). The majority states that because Cartwright could only be criminally liable for

---

[1]  "Except as otherwise provided by the statute defining the crime, a person is not criminally liable for conduct of another constituting a crime if:

"(1) He is a victim of that crime; or

"(2) The crime is so defined that his conduct is necessarily incidental thereto." ORS 161.165.

[ 191 ]

the crime of theft by receiving (ORS 164.095), but not for the crime of theft in the first degree (ORS 164.055), he cannot be considered an accomplice to the criminal act for which the defendants were indicted. In essence, the majority concludes that theft by receiving is a different criminal act than theft by taking and, therefore, the proscription of ORS 136.440 regarding accomplice testimony is not applicable to this case.

The majority's conclusion finds support in past decisions of the Supreme Court holding that a receiver of stolen property is not an accomplice for purposes of ORS 136.440. *See State v. Duggan,* 215 Or 151, 167, 333 P2d 907 (1958); *State v. Moxley,* 54 Or 409, 412, 103 P 655 (1909). However, the majority ignores the fundamental premise upon which the Supreme Court's conclusion rested:

"* * * We are aware that there are respectable authorities that hold that a receiver of stolen goods is an * * * accomplice; but we think that logic and the better authority sustain the opposite view, especially in a State like ours, *where the statute by its terms has made larceny and the receiving of stolen goods distinct and substantive offenses.*" *State v. Moxley, supra,* 54 Or at 412. (Emphasis supplied.)

The distinction referred to by the Supreme Court no longer exists. In 1971 the Legislative Assembly enacted ORS 164.015, which provides:

"A person commits theft when, with intent to deprive another of property or to appropriate property to himself or to a third person, he:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or

"(2) Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065; or

"(3) Commits theft by extortion as provided in ORS 164.075; or

"(4) Commits theft by deception as provided in ORS 164.085; or

"(5) Commits theft by receiving as provided in ORS 164.095."

[ 192 ]

The Criminal Law Revision Commission Commentary to the Proposed Oregon Criminal Code, § 124 (1970), stated that

"[t]he primary purpose of this section is to eliminate the traditionally distinct crimes of *larceny,* larceny by trick, embezzlement, obtaining property by false pretenses, *receiving stolen property* and extortion *and to consolidate them into one crime called 'theft.' * * *.*" Commentary, *supra* at 132. (Emphasis supplied.)

The categorization of theft and theft by receiving as one crime is mandated by ORS 164.025(1), also enacted in 1971, which provides:

"Except for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense."

This court has also recognized that ORS 164.015 defines only one crime and not several criminal acts. In *State v. Jim/White,* 13 Or App 201, 218, 508 P2d 462, *rev den* (1973), we stated:

"The intent of the legislature was that ORS 164.015 define one crime and not several * * *."

The majority therefore errs when it concludes that theft by receiving and theft in the first degree are two distinct criminal acts for the purposes of ORS 136.440.

I would hold that Cartwright was an accomplice of the defendants for the purposes of ORS 136.440. I would also hold that Mrs. Foote was an accomplice of the defendants in her role as a lookout. *See State v. Miller,* 2 Or App 408, 410, 467 P2d 973, *rev den* (1970). Therefore, I would reverse the defendants' convictions because the testimony of their accomplices was not corroborated by other evidence.