Argued April 14, affirmed May 19, rehearing denied July 7, 1914.

# STATE *v.* GARRETT.

(141 Pac. 1123.)

**Criminal Law—Evidence—Brands—Recorded Certificate.**

1. A certificate of the adoption of a brand, which sets out a *facsimile* of the brand, is admissible in evidence, though it contains no further description of the brand.

[As to brands on animals as evidence of ownership, see note in Ann. Cas. 1913E, 133.]

**Criminal Law—Evidence—Acts and Declarations of Conspirators—Termination of Conspiracy.**

2. Where the evidence tends to show that two defendants killed a steer with the stealing of which they were charged, and took the meat and sold it at much less than the prevailing prices, evidence of the acts and statements of the defendant not on trial while selling the meat was admissible; the conspiracy not having terminated.

[As to what constitutes conspiracy and evidence in prosecutions for it, see note in 3 Am. St. Rep. 474.]

**Larceny—Evidence—Admissibility.**

3. Under Section 5526, L. O. L., giving a person recording a brand the exclusive right to its use, and providing that a person who has had a brand recorded may consent that another person have the same or a similar one recorded but that such consent must be in writing, and must be filed with the county clerk, evidence in a prosecution for larceny of a steer of assignment of a brand several months after the date of larceny was inadmissible.

**Criminal Law—Appeal—Harmless Error—Admission of Evidence.**

4. In a prosecution for larceny of a steer, the admission in evidence of an assignment of the owner's brand several months after the larceny was harmless.

**Larceny—Evidence—Admissibility.**

5. In a prosecution for larceny of a steer, where the evidence tends to show that the steer in question and another were slaughtered by defendants at the same time, evidence of the finding of the hide and other parts of the other animal, buried near where parts of the steer in question were found buried, was admissible.

[As to animals as subjects of larceny, see note in 47 Am. Rep. 765.]

**Criminal Law—Trial—Instructions—Instructions Already Given.**

6. The court may instruct the jury in its own language, and if the charge properly covers all the points, it is not error to refuse charges which state the law correctly.

From Crook: WILLIAM L. BRADSHAW, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

Dick Garrett, Ray Clark, and "Chick" Wright were indicted for larceny of a steer.   Dick Garrett and Ray Clark were arrested and tried.   Garrett was convicted and sentenced to imprisonment in the penitentiary for a term of not less than 1 nor more than 10 years. Clark was acquitted.   Wright has not been arrested. Dick Garrett appeals.   The facts are stated in the opinion.        AFFIRMED.   REHEARING DENIED.

For appellant there was a brief with oral arguments by *Mr. W. P. Myers* and *Mr. Enoch B. Dufur.*

For the State there was a brief over the names of *Mr. Willard H. Wirtz,* District Attorney, *Mr. Wells A. Bell* and *Mr. William H. Wilson,* with an oral argument by *Mr. Wirtz.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The charging part of the indictment is as follows:

"The said Dick Garrett, Ray Clark, and C. Wright, on the 1st day of December, A. D. 1911, in the said county of Crook and State of Oregon, then and there being, and then and there acting together, did then and there unlawfully and feloniously take, steal, drive, and carry away one steer, the personal property of H. L. Priday and Mary Priday, comprising a copartnership, consisting of the said H. L. Priday and Mary Priday contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Oregon."

The defendant Clark was acquitted, and the defendant Wright has not been arrested.   The defendant Garrett was convicted, and he appeals.   There was no motion for a nonsuit, or for a directed verdict, and

hence it is not necessary to review the evidence. We may say, however, that there is sufficient evidence to sustain the verdict and judgment, unless they are vitiated by errors of law, occurring on the trial.

1. Leslie Priday filed for record, and had recorded, in the office of the county clerk of Crook County, on January 12, 1898, a certificate showing his brand, of which the following is a copy:

"Brand of Leslie Priday.

"This is to certify that I, the undersigned, Leslie Priday, residing in Crook County, Oregon, desiring to adopt a brand and earmark for the purpose of marking and branding livestock in the county of Crook, State of Oregon, do hereby adopt and claim the sole and exclusive right to use in said county the brand and marks hereinafter described, for horses, cattle and other livestock, the following being a *facsimile* and description of said brand, to wit: Horses: ⌐ on the left shoulder. Cattle: ⌐ on both hips, earmark square crop off both ears. Earmark corrected by Leslie Priday, April 9, 1902.

"And I hereby apply to have the same recorded under act of the legislative assembly of the State of Oregon, of Feb. 20, 1893, and deliver herewith my brand burned upon a piece of leather, to be retained in the office of the county clerk.

"Witness my hand this 27th day of Dec., 1897.

"[Signed] LESLIE PRIDAY."

Indorsed on margin:

"I hereby assign all my right, title and interest to the within brand, to H. L. and Mary Priday, this 9th day of May, 1912.

"[Signed] LESLIE PRIDAY.

"Attest: WARREN BROWN, County Clerk.

"By A. W. BATTLES, Deputy."

The defendant objects to the admissibility of said certificate, and contends that it is fatally defective, in that it does not *describe* Priday's brand. It gives

a *facsimile* of the brand, and Priday left with the clerk, also, his brand burned upon a piece of leather. The brand is a peculiar form of the capital letter "T" *inverted,* and the certificate states that this brand is to be placed on the left shoulder of horses, and on both hips of cattle. The *facsimile* with the statement that the brand is to be placed on the left shoulder of horses and on both hips of cattle is a sufficient description to give notice to all persons what the brand of Priday is. The *facsimile* is a correct picture or copy of the brand, and it, with the statement that the brand is to be placed on certain parts of the bodies of animals, seems to afford all the information concerning the brand that the certificates to be recorded need contain.

Referring to brands of animals, 2 Cyc., page 325, says:

"When the record shows the brand and mark claimed, and by whom they are claimed, it attains all the purposes of the law."

In *McClure* v. *Sheek's Heirs,* 68 Tex. 430, 431 (4 S. W. 554, 555), the court says:

"The bill of exceptions to the introduction of the record from Palo Pinto was based upon the grounds: *First,* that the record was a mere recital of the mark and brand ostensibly made by the clerk; and, *second,* that it appeared that G. W. Sheek had another brand in Parker County. It is sufficient to say in regard to the *first objection that the entry upon the record book showed distinctly the brand and mark claimed by G. W. Sheek, and that this attained* all the purposes of the law. Its form was a matter of no importance otherwise."

In *Chestnut* v. *People,* 21 Colo. 521 (42 Pac. 659), the court says:

"While it is true that the transcript of record * * does not show a formal certificate, signed by Richard-

son, it does show the record of a brand in all other respects in conformity with the requirements of the statute. It shows a *facsimile* of the VI brand, describing it as being the letters 'V' and 'I' placed on the left shoulder of horses and mules and the left side of cattle, and Geo. S. Richardson as owner. We think it would be doing violence to the intent, and defeat the manifest purpose of the statute, to hold a brand so recorded and used for at least 10 years not provable under Section 3174, because the record, as certified, fails to show, in addition to such *facsimile* and description, a formal certificate signed by the party filing the same."

In the case just cited the record stated that the brand "VI" was composed of the letters "V" and "I" a fact that was obvious without any such statement; but it did not show that the owner of the brand filed for record any certificate showing that he had adopted or claimed said brand. The Colorado statute required the filing of such a certificate, and the copy offered in evidence failed to show any such certificate, but the Supreme Court in that case held the copy admissible notwithstanding said defect. The brand in that case had been filed and used for 10 years or longer. In this case Priday's brand had been recorded and used longer than that. In this case Priday failed to say in his certificate that his brand was the capital letter "T" inverted; but that fact was obvious from an inspection of the certificate and record. If a *facsimile* of the letter "T" is given, it adds little to say that it is the letter "T." In this case the copy admitted in evidence showed a proper certificate, and the only defect alleged against its sufficiency is its failure to state that the brand is an inverted letter T.

The syllabus of the court in *Brown* v. *Moss,* 53 Or. 519 (101 Pac. 207, 18 Ann. Cas. 541), is:

"The effect as evidence of a certified copy of a recorded stock brand being purely statutory, a compliance with the statutory requirements is necessary to give the copy such effect."

This does not mean that a *strict* compliance with the statute is necessary. A substantial compliance with the statute is all that is required. We hold that the certified copy of the record of the brand showed a substantial compliance with the statute, and that it was properly admitted in evidence.

2. The defendant contends that the court erred in permitting the witnesses Moore and Hammer to testify to statements and actions of "Chick" Wright, one of the defendants, occurring *after* the consummation of the alleged larceny, these statements and actions not occurring in the presence of the other defendants, and in giving the charge set out in exception 25, page 33, of the bill of exceptions. The indictment charges that the defendants acted together in committing the larceny charged. We have read the evidence, and we find that it tends strongly to show that this steer was killed in a canyon about 250 yards from the house where the defendant Garrett batched and lived; that the defendant Wright was there staying with Garrett at that house when the steer was killed; that the canyon where the steer was killed was difficult of access, and that there was no road there; that the persons who killed the steer killed another steer at the same time, and buried their skins, legs, and intestines there; that they cut the limbs off a juniper tree and placed them on the ground and placed the beef from these animals on the limbs of the juniper tree, and, when they were through, they loaded the beef into a spring wagon and hauled it away; that Wright and Garrett took this meat to different places and sold it or some

of it to various persons for from five to eight cents a pound, which was far below the prevailing prices for beef in that vicinity; that Wright and Garrett were engaged in selling this meat, but not always together, and that Wright made statements to persons when attempting to sell meat as to where he obtained it, etc., when Garrett was not present. We believe that the statements objected to by the defendants were all made during the time when he was selling this meat, and before it was all disposed of. The evidence relied upon to show the guilt of Garrett and Wright was nearly all circumstantial, but it was strong. We have stated merely what the evidence tended to show. There was positive evidence showing that both Garrett and Wright were peddling beef at about half price, and that both made statements as to where they obtained the beef, and that their statements did not always agree. Garrett was a witness in his own behalf, and admitted that he was "butchering" in a house near the canyon where this animal is shown to have been killed, and that Wright was there also. He says that they slaughtered three small steers on the hill near where the steer that was stolen was killed, and that he and Wright sold the beef from these steers, or most of it, about the time the steer in question was stolen; but he says that Judd McPherson owned the three steers that they killed; but McPherson was not produced to corroborate him. Garrett testified that he knew the Priday and Cram brands, and that the steers that he and Wright killed were not branded with those brands. The evidence tends strongly to show that Garrett and Wright stole and killed the steer in question for the purpose of selling the beef therefrom, and that they did so sell it, and that it was while they were disposing of this beef that Wright made the state-

ments objected to. The evidence tends to prove that Garrett and Wright conspired together to steal the steer in question, to slaughter it, and to sell the beef thereby obtained, and that they acted together in stealing and slaughtering the steer and in selling the beef.

The law as to the admission in evidence of the statements of one conspirator against another is stated thus in 2 Wharton, Criminal Evidence (10 ed.), Section 699:

"When the common enterprise is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted, by subsequent act or declaration of his own, to affect the others. His confession, therefore, subsequently made, even though by a plea of guilty, is not admissible in evidence, as such, against any but himself. * * But the mere flight of a conspirator, after performance of an overt act, does not preclude the declarations of his co-conspirators, immediately after the act, from being put in evidence against him. *Nor is a confederacy in larceny terminated by the mere taking. It continues until the articles are distributed.* And in other offenses, acts and declarations after the commission of the crime and until the purpose of the conspiracy is complete are admissible."

In *Scott* v. *State,* 30 Ala. 509, the court says:

"The strongest argument for the plaintiff in error against admitting as evidence against him the payment of the double toll by West is that the payment was made *after* the larceny of the watch was in legal contemplation complete as to West. But that argument, as well as every other urged by the plaintiff in error, can be satisfactorily answered. Conceding that the payment of the double toll was made after West had done enough to authorize his conviction for the larceny of the watch, yet there is evidence which conduces strongly to show that it was made 'while the conspiracy was pending, and in furtherance of the common design.' The evidence justifies the conclusion

71 Or.—20

that the conspiracy between West and the plaintiff in error was not confined to the mere felonious *taking and carrying away of the watch,* but extended *to a division of the profits of the larceny,* at a meeting to be held between them at another place, as soon as convenient. Having given to their conspiracy that extent, neither of them, when indicted, has the right to call upon the court to diminish its extent, for the purpose of relieving him from any of its consequences.''

In *O'Neal* v. *State,* 14 Tex. App. 590, 591, the court in a larceny case says:

''Here, as in the Scott case, it is evident that the conspiracy extended beyond the mere taking of the cattle. *It embraced the purpose and design of a sale of the cattle,* and a division of the proceeds of that sale among the conspirators. It was while this conspiracy was yet unaccomplished entirely, but, in so far as a sale and division of the proceeds were contemplated by it, was still incomplete and pending, that the acts and declarations of defendant's co-conspirators, which are objected to as inadmissible evidence against him, transpired, and were occasioned in furtherance of the common design. We are of the opinion that the court did not err in admitting the testimony objected to by the defendant.''

In *Byrd* v. *State,* 68 Ga. 661, the syllabus is in part:

''The acts and conduct of one accomplice during the pendency of the wrongful act, not only in its perpetration, *but also in its subsequent concealment,* are admissible against the other. So, also, his sayings pending the common criminal enterprise.''

See, also, on this point *Carter* v. *State,* 106 Ga. 376 (32 S. E. 345, 71 Am. St. Rep. 262); *Baldwin* v. *State,* 46 Fla. 115 (35 South. 220); *State* v. *Stevenson,* 26 Mont. 332 (67 Pac. 1001).

The evidence in this case tended to prove that the defendants Garrett and Wright conspired, not only to steal the steer, but to butcher him and sell the beef

and divide the proceeds of the sale between them. The acts and declarations of the defendant Wright that are objected to occurred after the larceny, but while he was selling the beef. If two persons conspire together to steal sacks of wheat in a field, and to sell it and divide the proceeds, the conspiracy is not ended until the wheat is sold and the proceeds divided. The trial court did not err in admitting proof of them. The instructions of the court concerning evidence as to statements of codefendants are correct.

3, 4. The defendant contends that the court erred in admitting in evidence the assignment of the Leslie Priday brand to H. L. Priday and Mary Priday. As shown *supra,* this brand was recorded as the brand of Leslie Priday, January 12, 1898. It was made out and dated December 27, 1897. On May 9, 1912, Leslie Priday wrote on the margin of the record of said brand, an assignment thereof to H. L. Priday and Mary Priday. H. L. Priday and Leslie Priday are the same person, and Mary Priday is his mother. He and his mother had been in the cattle business as partners, as shown by the evidence, for about 10 years prior to the making of said assignment, and their cattle had during that period been branded with the Leslie Priday brand by the consent of both parties. The evidence shows that the steer in question was bought by H. L. Priday and Mary Priday, and branded with the Priday brand with the consent of both parties. By the introduction in evidence of the copy of the Leslie Priday brand, and proof that the steer in question was branded with that brand, it was shown *prima facie* that said steer was the property of H. L. or Leslie Priday; but the undisputed oral evidence shows that said steer was bought by H. L. and Mary Priday, and branded with said brand by the consent of

both parties, as had been their custom for many years, and the evidence showed title to said steer to be in H. L. and Mary Priday. When a person has recorded a brand according to law, such recording gives him the exclusive right to the use of said brand: § 5524, L. O. L. Section 5526, L. O. L., provides that a person who has had a brand recorded may consent that another person have the same or a similar one recorded; but such consent must be in writing, and must be filed with the county clerk. There is nothing in our statute to prevent H. L. and Mary Priday from branding the cattle owned by them as partners with the recorded brand of H. L. Priday, if he consents thereto. Under our statute, the fact that an animal has been branded with a duly recorded brand is only *prima facie* evidence that said animal is the property of the recorded owner of the brand. It may be shown by parol evidence that the animal belongs to some other person. As the larceny in this case occurred in November or December, 1911, and the assignment of the brand was made in May, 1912, we are unable to see how such assignment could have any bearing on this case. We think that it was not admissible, but that its admission was harmless. We think that the evidence showed beyond any reasonable doubt that the steer in question was the property of H. L. and Mary Priday.

5. There was some evidence to the effect that the hide and some other parts of another animal were found buried near where parts of the steer in question were found to be buried. The evidence tends to show that both of these animals were slaughtered at the same time, and that they were so connected as to form one transaction. Under such circumstances, it was not error to permit evidence to show what had been

done there: Underhill, Criminal Evidence (2 ed.), § 88. The charge of the court refers only to the steer mentioned in the indictment, and it is evident that the jury understood that they were to find only as to the larceny of that steer, and that they had nothing to do concerning the other steer.

There are 19 assignments of error in the appellant's brief; but only a few of them were referred to in the points and argument. We have examined them, and we find no reversible error. We believe that the defendant had a fair and impartial trial.

6. The court's charge was full and fair to the defendant, and we think that the defendant has no substantial grounds for complaint. The court has the right to instruct the jury in its own language, and if the charge properly covers all the points, it is not error to refuse to give requested charges which state the law correctly.

Section 1626, L. O. L., relating to appeals in criminal cases, is as follows:

"After hearing the appeal the court must give judgment, without regard to the decision of questions which were in the discretion of the court below, *or to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.*"

We have no right to reverse a case for errors that do not affect the substantial rights of the appellant.

The judgment of the court below is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.