Motion to dismiss denied March 28; argued May 26; affirmed
June 13, 1933

# STATE *v.* JOHNSTON

(22 P. (2d) 879)

*Robert G. Smith,* of Portland, for appellant.

*Barnett H. Goldstein,* Assistant Attorney General (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

CAMPBELL, J. Defendant and another were jointly indicted by the grand jury of Multnomah county for the crime of embezzlement. A separate trial was demanded by his codefendant. This defendant was tried alone, found guilty and sentenced to a term in the state penitentiary. From such conviction and sentence, he appeals.

The indictment reads as follows:

"Carl H. Johnston and Peter Damskov are accused by the Grand Jury of the County of Multnomah and State of Oregon, by this indictment of the crime of

UNLAWFULLY EMBEZZLING, FUNDS AND CREDITS OF A SAVINGS AND LOAN ASSOCIATION, committed as follows:

"That on, to-wit: the 19th day of October, A. D., 1931, and for some time continuously prior thereto, and for some time continuously thereafter, the Prudential Savings & Loan Association was a corporation duly created, organized and existing under and by virtue of the laws of the State of Oregon, and engaged in carrying on the business of a savings and loan association within the State of Oregon, with its principal office and place of business within the County of Multnomah and State of Oregon.

"That on, to-wit: the said 19th day of October, A. D., 1931, the said Carl H. Johnston in the County of Multnomah and State of Oregon then and there being, and then and there an officer of the aforesaid Prudential Savings & Loan Association, to-wit: the President thereof, and by virtue of his employment as such officer as aforesaid, there did then and there come into his possession and be under his care and control and was so then and there in his possession and under his care and control, the moneys, funds, credit and property of, and then and there belonging to said Prudential Savings & Loan Association as aforesaid.

"That on, to-wit: the 19th day of October, A. D., 1931, the said Peter Damskov, in the County of Multnomah and State of Oregon then and there being, and then and there an agent of the said Prudential Savings & Loan Association, to-wit: the Property Manager thereof.

"That on, to-wit: the said 19th day of October, 1931, in the County of Multnomah and State of Oregon, the said Carl H. Johnston and Peter Damskov, as aforesaid, then and there being the president and Property Manager respectively of the Prudential Savings & Loan Association, as aforesaid, which said association was then and there doing and carrying on a savings and loan business in the county and state aforesaid, and the said Carl H. Johnston and Peter Damskov as such officer and agent, that is to say as such President and Property Manager respectively, then and there

having the custody and care of the moneys, funds, credits and property of said association, did then and there, by virtue of their said employment as aforesaid, wrongfully, unlawfully, feloniously and willfully, with intent then and there on the part of them, * * * to injure and defraud said association, embezzle and convert to the use, benefit, gain and advantage of the said Carl H. Johnston and Peter Damskov, and each of them and of other persons whose names are to this grand jury unknown, certain moneys, funds, credits and property of the said association, to the amount and of the value of Five Thousand and Eight Hundred Fifty and No/100 Dollars ($5,850.00), from and out of the moneys, funds, credits and property of said association, by then and there paying and causing said sum to be paid out of such moneys, funds, credits and property of said association on a check in the sum of Five Thousand Eight Hundred Fifty and No/100 Dollars ($5,850.00), drawn upon the Bank of California, at Portland, Oregon, by the said Carl H. Johnston as President, and Lois Jenks as Secretary of said Prudential Savings & Loan Association, as aforesaid, and dated the 19th day of October, 1931, and made payable to one W. C. Becktell, which check was then and there by the said Carl H. Johnston and Peter Damskov caused to be cashed and paid out of such moneys, funds, credits and property of the said association, and the proceeds thereof, to-wit: the said sum of Five Thousand Eight Hundred Fifty and No/100 Dollars ($5,850.00) in money, the exact description thereof being to this grand jury unknown, delivered to the said Carl H. Johnston and Peter Damskov, and by them converted to the use and benefit of the said Carl H. Johnston and Peter Damskov, and each of them, and other persons whose names are to this grand jury unknown, the said Carl H. Johnston and Peter Damskov, and each of them, then and there well knowing that the said Prudential Savings & Loan Association had received no consideration whatsoever for the payment of said sum of Five Thousand Eight Hundred Fifty and No/100 Dollars ($5,850.00) as aforesaid, out of the moneys, funds, credits, and property of the said association, * * *''.

To this indictment, the defendant filed a demurrer and assigns as error the overruling thereof.

■■ ■ The defendant contends that the indictment is insufficient because it charges both larceny and embezzlement; that it fails to state facts sufficient to constitute a crime and that it does not conform substantially to the requirements of Chapter VII of Title XIII of the Oregon Code.

Section 14-325, Oregon Code 1930, provides:

"If any officer * * * of any * * * corporation, shall embezzle or fraudulently convert to his own use, * * * any money, property, or thing belonging wholly or in part to such corporation, which may be the subject of larceny, * * * and which shall have come into his possession, and be under his care by virtue of such employment, such officer, * * * shall be deemed guilty of larceny * * *".

The above statute defines the crime of embezzlement as a species of larceny. *State v. Browning*, 47 Or. 470 (82 P. 955). Larceny requires an unlawful acquisition, and the intent to permanently deprive the owner of his property, while embezzlement is a fraudulent conversion of the property, lawfully in the possession of defendant to his own use. The trespass or wrongful taking in larceny is not present in embezzlement, a breach of confidence being substituted therefor. *State v. Browning*, supra; *State v. Coleman*, 119 Or. 430 (249 P. 1049). There is no allegation of a felonious taking, or a fraudulent acquisition of possession of the property alleged to have been embezzled, in the indictment.

The indictment plainly, and with certainty, alleges that the defendant, in conjunction with another, by virtue of their fiduciary relationship with the aforesaid association, had control and care of certain moneys of the said association; that defendant by means

of a check in the sum of $5,850, drawn on the Bank of California at Portland, Oregon, and paid by the funds of the said association, "wrongfully, unlawfully, feloniously and wilfully" with intent to defraud said association converted said money to his own use. The defendant, the court and the jury were fully advised as to the nature of the crime charged and defendant would be protected, upon acquittal or conviction, from being tried a second time for the same offense. *State v. Dormitzer,* 123 Or. 165 (261 P. 426); *State v. Cooke,* 130 Or. 552 (278 P. 936).

■ The defendant contends that the court erred in admitting the testimony of W. C. Becktell as to statements made by the defendant, Damskov, in the absence of his co-defendant, Johnston.

■ The bill of exceptions is very meager. The court's certificate shows that it does not contain all the evidence. Questions regarding the admissibility of evidence will generally not be reviewed on appeal when all the evidence is not incorporated in the bill of exceptions.

"If the evidence could have upon any theory of the case been admissible, it was the duty of the defendant to have negatived that theory by proper statements in his bill of exceptions. If it was admissible as a link in a chain of such occurrences, it devolved upon him to show by the bill of exceptions that those necessary links were not supplied by other testimony. As we said in Pacific Laundry Co. v. Pacific Bridge Co., 69 Or. 306 (138 P. 221), and here repeat:

" 'A bill of exceptions must point out error * * * and make it plain that under no combination of circumstances could the testimony have been admissible' ". State v. McClard, 81 Or. 510 (160 P. 130); State v. Hing, 77 Or. 462 (151 P. 706).

██. The witness, Becktell, testified that defendant Damskov had handed him a check for $5,850 (state's exhibit No. 6). Counsel for the state then asked the witness to relate what Damskov had said to him at that time. Counsel for defendant objected to this question on the grounds that such testimony was "hearsay, incompetent, irrelevant, and declarations of an accomplice".

It is, therefore, admitted by appellant and also well settled that the declarations of one of the conspirators which occurs before the actual commission of the alleged crime, and which tends to prove the guilt of that conspirator, is equally admissible in evidence against any one of his confederates in a separate trial of the latter. Oregon Code 1930, § 9-226, Sub. 6; *State v. Ryan,* 47 Or. 338 (82 P. 703, 1 L. R. A. (N. S.) 862); *State v. Caseday,* 58 Or. 429 (115 P. 287); *State v. Boloff,* 138 Or. 568 (4 P. (2d) 326, 7 P. (2d) 775).

In a well-reasoned case, *Tuckerman v. United States,* 291 Fed. 958, the court said:

"It is the general rule that where two or more persons are associated for the same illegal purpose, and even where the indictment does not charge conspiracy, any act or declaration of one of the parties in reference to the common object, and forming part of the res gestae, may be given in evidence. American Fur Co. v. United States, 2 Pet. 358, 365, 7 L. Ed. 450; Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 287".

 Defendant contends that the court erred in admitting in evidence, over his objection, state's exhibit No. 7, which exhibit was a receipt for $5,850, signed by appellant and which the evidence shows was for the money claimed to have been embezzled. The receipt, a printed form, contained the words, "The above collections were received for the

PRUDENTIAL SAVINGS & LOAN ASSOCIATION, by Cashier''. The words, ''SAVINGS & LOAN ASSOCIATION'', were crossed out and the word, ''BAN-CORPORATION'', written in pen and ink, substituted therefor. This was the receipt that Lois Jenks, a witness for the state, testified as having received from appellant when she delivered him the money referred to.

Appellant's contention, that this constituted a variance between the allegations of the indictment and the proof, is untenable. This testimony was clearly admissible for the purpose of showing an essential element of the charge, to wit: That defendant received the money. However, other testimony relating to this exhibit had been received without objection by defendant and he could not have possibly been prejudiced by the admission of the receipt. Furthermore, no motion was made to strike the oral testimony.

As to assignment of error No. 4, it is fully covered by assignment of error No. 2.

██ ██ Defendant next contends that the court erred in admitting evidence of other embezzlements alleged to have been committed by defendant prior to the offense charged in the indictment and from the same corporation.

Intent is an essential element of the crime of embezzlement, *State v. Marco,* 32 Or. 175 (50 P. 799), and the evidence was admissible for the purpose of showing a criminal intent on the part of appellant. *State v. Cooke,* 130 Or. 552 (278 P. 936); *State v. Lee Wye,* 123 Or. 595 (263 P. 60); *State v. McClard,* supra; *State v. Hattrem,* 140 Or. 371 (13 P. (2d) 618).

██ ██ Defendant assigns as error the court's instruction as to the care and custody of the property em-

bezzled and that degree of custody which would constitute possession so as to bring the offense within the realm of the particular crime of embezzlement, as follows:

"It must appear from the evidence that the moneys, funds and credits of the corporation alleged to have been embezzled, were, previously to their alleged wrongful appropriation, lawfully in the possession and custody of the defendant, and that they were, while so held by him, wrongfully converted to his own use. It is not, however, necessary that the defendant should have been in the exclusive custody or possession at the time of the conversion to his own use, in order to constitute this offense. If the evidence establishes that the business and assets of the corporation were actually or practically entrusted to the care and management of the defendant, so that by virtue of his position as president, he had not merely access to, or a constructive holding of, but such actual custody of the funds and other assets of the corporation as enabled him to have and exercise control over the same, that would place him in the lawful possession of the said funds or other property; and, if, while so lawfully in possession of such funds or other property, committed to his care and custody for the benefit of the corporation, he wrongfully converts any part or portion of said assets to his own use, he would thereby commit the offense of embezzlement. If his position and employment gave the defendant a superior or a joint and concurrent possession with subordinate employees or agents of the corporation, that would be sufficient to place him in such lawful possession as would enable him to commit the crime of embezzlement".

Defendant contends that because the money passed through the hands of Miss Lois Jenks, the treasurer and a director of the company, the subsequent conversion of the money by defendant was larceny and not embezzlement.

Defendant as president of the said association, signed the check with Miss Jenks, the treasurer, and made the said check payable to Becktell who, in company with defendant Damskov, cashed the check and received the money therefor. Becktell surrendered possession of the money to Damskov for the purpose of giving it to Johnston. Whether he handed it to Damskov who in turn gave it to Miss Jenks who gave it to Johnston, or to Johnston himself, is immaterial for the embezzlement was complete when Becktell cashed the check for the use and benefit of Johnston. Johnston completed the wrongful conversion through his agents Becktell, Damskov and Miss Jenks.

When the court concluded the instructions to the jury, counsel for defendant asked the court, "Now did your Honor give all these instructions asked by the state?", and the court answered, "No, I did not". Counsel then proceeded to take an exception to the court giving state's requested instruction No. 1, "Because it is against the law" and continued and excepted to state's requested instructions Nos. 2, 3, 4, 6, 8, 9, and 10, on the same grounds. In fact, the only ground stated by counsel for excepting to any of the instructions given was that the particular instruction excepted to "was against the law".

It should be unnecessary to repeat that it is only error properly excepted to that will be reviewed upon appeal. It is the duty of counsel, when excepting to instructions given, to point out to the court in what respect the instruction excepted to is erroneous. 16 C. J. 1072; *Hooton v. Jarman Chev. Co.*, 135 Or. 269 (293 P. 604, 296 P. 36); *La Grande National Bank v. Crum*, 139 Or. 530 (11 P. (2d) 553).

 These assignments of error are predicated on the court's refusal to give certain instructions requested by defendant.

The first requested instruction was to direct the jury to return a verdict of not guilty.

There was ample competent testimony to take the case to the jury.

Defendant requested certain other instructions, some of which, in a modified form, were correctly covered in the court's general charge. Those that were not given referred to the statutory caution to be given to the jury that the testimony of an accomplice is to be viewed with distrust, and that defendant cannot be convicted on the uncorroborated testimony of an accomplice.

These requested instructions are correct in the abstract, but are not applicable to the facts in this case. In the absence of evidence, either direct or circumstantial, the jury would have no right to guess that any one of the witnesses in the case was an accomplice of defendant. The record presented here does not disclose whether co-defendant Damskov was or was not a witness in the case.

"In considering the fifth request, it is sufficient to say that the record does not purport to contain all the evidence, and hence it must be presumed the court properly denied it". State v. Brown, 28 Or. 147 (41 P. 1042).

However, we have carefully considered the instructions given by the learned trial judge and they fully and carefully covered all the elements of the crime and the theory on which the case was tried as disclosed by the record brought to this court.

██ ██ This assignment of error is based on certain remarks made by counsel for the state in his open-

ing statement of the case. These remarks were objected to by counsel for defendant. The objection was sustained and the jury instructed to disregard them.

Again in his closing argument, the state's attorney referred to "the thousands of shareholders in these associations whose investments were jeopardized by the defendant". To these remarks, defendant objected as being improper and prejudicial and further requested the court to declare a mistrial and discharge the jury. The court informed the jury that the reference to the shareholders and acts of defendant in relation to them was improper and that the jury should disregard all that was said in that respect, but refused to order a mistrial.

"The record shows that the counsel for defendant objected to statements which he imputes to the prosecutor in his closing address to the jury. The court in every instance sustained his objection. * * * Considering that the speech complained of is not quoted, and the court sustained the objections and cautioned the jury on that subject not to regard the statements imputed to counsel for the state, we are of the opinion that this matter furnishes no grounds for a reversal of the judgment". State v. Humphrey, 63 Or. 540 (128 P. 824).

The court's instructions and his caution to the jury removed from their consideration the remarks objected to. *Huber v. Miller,* 41 Or. 103 (68 P. 400); *State v. Kingsley,* 137 Or. 305 (2 P. (2d) 3, 3 P. (2d) 113).

Finding no prejudicial error, the judgment will be affirmed. It is so ordered.

RAND, C. J., and BELT, J., not sitting.