Argued November 10, 1960, reversed and remanded
January 11, 1961

# STATE OF OREGON *v.* GARDNER

358 P. 2d 557

*Edward N. Fadeley,* Eugene, argued the cause and filed briefs for appellant.

*Frank R. Alderson,* Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief was William F. Frye, District Attorney, Eugene.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, KING and HOWELL, Justices.

HOWELL, J. (Pro Tempore)

Defendant appeals from a conviction of the crime of burglary not in a dwelling.

The charging portion of the indictment is as follows:

"The said DONALD RAY GARDNER and EUGENE GARDNER on or about the 13th day of November, 1959, in the County of Lane and State of Oregon, then and there being, and then and there acting together and in pursuance of a common in-

tent with William Douglas Campbell and Richard Alfred, did then and there willfully and unlawfully, and with intent to steal therein, break and enter a certain building of another which was not a dwelling, to-wit: the Tires Unlimited building located at 2797 Roosevelt Boulevard, Eugene, Oregon, by then and there wilfully and unlawfully breaking and entering through an outer door thereof; said building then and there having property of another kept therein; contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Oregon."

As defendant assigns as error the denial of a motion for acquittal made at the close of the State's case, a review of the evidence is necessary.

A burglary of the Tires Unlimited building in Eugene, Oregon, was committed on the night of Friday, November 13, 1959. The glass in a rear door was broken, entry made and a 600-pound safe removed from the building. The safe was found later in a mill pond near Eugene. The bottom of the safe had been broken or cut open and the contents, including check books and records, were scattered about the area.

The State presented evidence that the defendant, his brother Eugene, William Campbell and Richard Alfred were together in the apartment of a mutual friend on the night in question. The four left the apartment about 9:30 p. m. in a 1953 Oldsmobile car owned by one of the girls who was present at the apartment. About midnight Campbell, Alfred and two other persons were in the Oldsmobile at Pierson's Rental in Eugene where one of the four attempted unsuccessfully to rent an appliance dolly used for moving furniture. Later an appliance dolly was taken from Pierson's and found after the burglary near the rear of the Tires Unlimited building.

About 2:00 a. m. the following morning all four returned together in the Oldsmobile to the apartment. The Oldsmobile had been used as the means of transportation to the Tires Unlimited building where the burglary was committed. The four stayed briefly, departed, returned again to the apartment about 6:30 a. m. and left together at 9:30 a. m.

Later that day the defendant borrowed a cold chisel and a cutting torch from some friends. A tip from a cutting torch, which was used to open the safe, was found in defendant's car.

Alfred and Campbell both admitted their participation in the burglary and Alfred testified that the defendant's car was used to haul the safe from the Tires Unlimited building.

When the defendant returned to the apartment on Saturday, he asked the girl who had the apartment to come outside as he had a check for her to cash. The check was identified as one stolen in the burglary.

■ While the evidence against the defendant was circumstantial, we are not authorized to grant a new trial for insufficiency of such evidence unless we can affirmatively say there was no substantial evidence to support the verdict. *State v. Duggan,* 215 Or 151, 333 P2d 907; *State of Oregon v. Caputo,* 202 Or 456, 274 P2d 798; *State of Oregon v. Moore,* 194 Or 232, 241 P2d 455.

In *State v. Tucker,* 36 Or 291, 305, 61 P 894, the following instruction was approved:

"Where two or more defendants are charged jointly with the commission of a crime, it is not necessary that it be shown that both of the defendants, or either one of them, when tried alone, actually broke and entered the building or took the property. It is sufficient if it be shown that the

joint defendants were acting together for that purpose, and if either one of them, while so acting together for that purpose, actually broke and entered the building with the intention of stealing therein, then all of the said defendants would be guilty of the crime, and either one of them may be prosecuted alone therefor."

This court also stated on page 306:

"The breaking was proven, and there was evidence tending to show that two persons were engaged in it. Further than this, the defendant and Wilbur Fruit were found associating together shortly afterwards, and jointly engaged in disposing of the fruits of the burglary."

In *State v. Brake,* 99 Or 310, 315, 195 P 583, this court said:

"Intimate association with the accomplice, however, at or about the time of the commission of the crime, and in the neighborhood of the place where the crime was committed, may sometimes be sufficient, especially where the defendant and the accomplice were not only together, but had the fruits of the crime in their possession."

■ We believe there was sufficient evidence, although circumstantial, to deny the motion for acquittal.

The defendant also assigns as error the admission of certain testimony regarding the check stolen in the burglary. The defendant contends the evidence introduced by the State from the witness Luella Smith was prejudicial as showing the defendant's participation in the crime of forgery. The following occurred:

"Q And what did he say then?
"A He said he had a check for me to cash.
"Q All right. Where did you go after—
"MR. DOOLITTLE: Your Honor, unless this testimony has something to do with a later admission of some kind by the defendant this is—

"THE COURT: Well, if it isn't connected it will be stricken.

"Q After that comment where did you go, if any place?
"A We went down to Safeway.

"Q And who did you go with, if anybody?
"A Donnie and Doug and Clinton.

"Q All right, referring to the defendant in this case as Donnie?
"A Yes.

"Q And which Safeway store did you go to?
"A The one out on Franklin Boulevard.

"Q And I refer you to Plaintiff's Exhibit E for identification and ask you if you recognize that.
"A Yes, I guess it is the same one, I don't know.

"Q Well—
"A I mean, I imagine it is.

"THE COURT: Well, do you know? Who is it made out to?

"THE WITNESS: Louise M. Porter.

"THE COURT: Was it already made out when you first saw it, or was it made out after you saw it?

"THE WITNESS: After I got in the car it was made out.

"THE COURT: And you recognize it?

"THE WITNESS: Yes.

"THE COURT: All right.

"Q You said it was made out in the car?
"A Yes.

"Q And do you know where Donnie Gardner, the defendant was at that time?
"A He was driving.

"Q All right. And where—you said you went to the Safeway store. Did you have possession of that check after it was written out?

"A Yes.

"Q And what did you do with it?

"A I went and tried to cash it.

"* * * * *

"MR. ALDERSON: All right, Your Honor, the State will offer State's Exhibit E for identification.

"MR. DOOLITTLE: Your Honor, it is just a general relevancy objection, but as to the—

"THE COURT: The objection will be overruled. It will be received.

"Q Now, you have indicated that you weren't successful in cashing State's Exhibit E. What did you do after you were unsuccessful in cashing that check? What did you do after that?

"A I went out of the store and went home.

"Q When you left the store where did you first go to?

"A To the car.

"* * * * *

"Q Now, was there any conversation, or what was said if anything when you came back to the car after having attempted to cash the check?

"A I just said it wouldn't go over, and so we went back to the apartment.

"* * * * *

"Q Now, you were arrested and have been convicted of the charge of trying to cash that check, haven't you?

"A Yes.

"Q And you are on a suspended sentence at the present time, aren't you?

"A Yes."

■ It is axiomatic that in a prosecution for a particular offense evidence tending to show the defendant

guilty of another distinct offense not connected with the crime charged is inadmissible. *State v. Long,* 195 Or 81, 112, 244 P2d 1033; *State v. Casey,* 108 Or 386, 213 P 771, 217 P 632; *State v. Houghton,* 43 Or 125, 71 P 982.

■ In *State v. Folkes,* 174 Or 568, 150 P2d 17, the judgment of conviction was affirmed, although incompetent evidence was received, because the defendant in that case "was conclusively proven guilty by his own confession corroborated by other unimpeached and uncontradicted evidence." In the instant case the evidence of defendant's guilt was circumstantial, conflicting and for the jury to determine uninfluenced by incompetent evidence. In *State v. Thomson,* 203 Or 1, 14, 278 P2d 142, this court speaking through Mr. Justice LUSK approved the following statement taken from *State v. Hatcher,* 29 Or 309, 313, 44 P 584:

"* * * 'unless the record conclusively shows that the error in the admission of incompetent evidence was not prejudicial to the party objecting, the judgment should be reversed.'"

If the State desired to show the defendant had recent possession of the fruits of the burglary, it could have done so by showing the defendant's possession of the check. It was not necessary to show the forgery, the attempt to pass the check and the girl's conviction and sentence. This was, we believe, prejudicial to the defendant.

■ In view of another trial we will notice briefly defendant's last assignment of error pertaining to the admission of evidence of certain statements made in the presence of the accused.

The witness Dorothy Reese testified that the defendant, his brother Eugene, Campbell and Alfred returned to the apartment early Saturday morning. At

that time, in her presence, Campbell said "they were going to have to get some kind of glycerin," and Alfred said glycerin would "blow them all up." Campbell also commented about moving the safe into the car and getting the safe out of the water. The witness did not attribute any statement to the defendant but stated he was present in the room with the others, sitting on the couch.

The State presented evidence of a conspiracy between the defendant, his brother Eugene, Campbell and Alfred to commit a wrongful act. It is true that the indictment did not charge a conspiracy but this was not necessary. *State v. Weitzel,* 157 Or 334, 344, 69 P2d 958; *State v. Johnston,* 143 Or 395, 22 P2d 879; 2 Wharton, Criminal Evidence (12th ed) 187, § 418.

> "When it is established that persons are associated together to obtain a common objective, then the act of one towards that end is the act of all. When such a conjunction of persons is established by evidence, then the admissions or declarations of one are binding on the others. It is not the name by which such a combination is known that matters, but whether such persons are working together to accomplish a common result." *State v. Keller,* 143 Or 589, 599, 21 P2d 807.

See also *State v. Weitzel,* supra; *State v. Garrett,* 71 Or 298, 141 P 1123; *State v. Ryan,* 47 Or 338, 82 P 703.

While the general rule is that declarations of conspirators after the end of the conspiracy are not admissible against a coconspirator, the conspiracy was not terminated at the time of the challenged conversation. The conspiracy continued until a disposition was made of the articles stolen.

> "In cases of larceny, burglary, and robbery, when several persons conspire to act together in

the preparation for and commission of such crimes, the conspiracy is deemed to continue until the proceeds and fruits of the crime are disposed of, or divided among the conspirators." 2 Wharton, Criminal Evidence (12th ed) 205, § 431.

See also *State v. Garrett,* supra.

It follows, therefore, that the challenged statements made in the presence of the defendant were admissible.

For the reasons assigned herein the judgment is reversed and remanded for a new trial.

O'CONNELL, J., dissenting.

The admission of the testimony of Luella Smith showing the forgery, the attempt to pass the check obtained in the burglary, and her conviction did not constitute reversible error. Essentially, the case which the state was required to prove consisted of the identification of the defendant as one of the participants in the burglary. An important element of the state's proof in so identifying the defendant was the showing that he possessed at least one of the fruits of the burglary—the check. However, it was necessary that the state connect the check which defendant was shown to have possessed with those taken in the burglary. The evidence established that the checks taken in the burglary were blank. The check introduced into evidence contained writing. The state was entitled to connect the forged check with the blank check taken from the safe. That part of the testimony of Luella Smith establishing this connection was admissible. The state went beyond this and brought out the complete story of the crime of forgery for which Luella Smith was convicted and in which defendant participated. It is true that evidence of other crimes is not generally

admissible. But as *State of Oregon v. Long,* 195 Or 81, 112, 113, 244 P2d 1033 (1952) points out, "[t]he admissibility of evidence of other offenses is, in its essence, merely a special aspect of the broad general problem of relevancy" and "[i]f evidence of a collateral crime tends to prove the commission of the crime charged in the indictment, the general rule of exclusion has no application." This has been the consistent view of our cases. See, *State v. Langley,* 214 Or 445, 315 P2d 560, 323 P2d 301, cert. den., 358 US 826, 79 S Ct 45, 3 L ed2d 66 (1958); *State v. Broadhurst,* 184 Or 178, 196 P2d 407 (1948); *State v. Ewing,* 174 Or 487, 149 P2d 765 (1944); *State v. Sullivan,* 139 Or 640, 11 P2d 1054 (1932).

It should be noted that the evidence elicited from Luella Smith only incidentally tends to prove the commission of another offense by the defendant. Evidence of other offenses is most prejudicial when the state proves other *convictions* of the defendant with the object of branding him as a bad man. Here, the state did not attempt to prove defendant guilty of the crime of forgery. Indeed, the evidence clearly indicates that he neither filled in the check nor attempted to cash it. It is unrealistic and unwarranted to assume that the jury, on the basis of this testimony, would convict the defendant of the crime of burglary simply because there was evidence that he was a conspirator with Luella Smith in committing the crime of forgery.

The evidence of the defendant's conduct which constituted his participation in the crime of forgery was relevant in proving the crime with which he was charged. The evidence of Luella Smith's activities after the check was forged may not have been relevant. However, no objection was made with respect to this evidence and it is well established that failure to object,

together with no motion to strike, constitutes a waiver or concession of admissibility. *State v. Langley,* supra; *State v. Cunningham,* 173 Or 25, 144 P2d 303 (1943); *State v. McDaniel,* 39 Or 161, 65 P 520 (1901). In any event, I do not believe that the admission of that evidence was so prejudicial to the defendant as to warrant a reversal of the judgment in this case.

Defendant made two objections concerning the evidence in question, both solely on the ground of "general relevancy." The first was taken at the commencement of the questioning with respect to the conduct of Luella Smith and defendant when they were making preparations to cash the check. The second was taken in objecting to the admission of the check into evidence. A part of the evidence was relevant, a part was irrelevant. Defendant's "general relevancy" objection can receive no more favorable treatment than that accorded the so-called general objection, i.e., an objection advanced on the general grounds that the evidence is irrelevant, incompetent and immaterial. We have repeatedly held that such an objection is not sufficient unless the evidence sought to be admitted is obviously improper. *U. S. Nat. Bank v. Guiss et al.,* 214 Or 563, 331 P2d 865 (1958); *Hryciuk v. Robinson,* 213 Or 542, 326 P2d 424 (1958); *Goldfoot v. Lofgren,* 135 Or 533, 296 P 843 (1931). The trial court should have been more specifically apprised of the theory upon which the objection was taken as it related to the testimony elicited. After the testimony was given defendant made no effort to have the testimony stricken. Under these circumstances, I am of the opinion that the admission of the testimony was not reversible error.